**Robert H. ADAIR et al., Plaintiffs,**

v.

**Gordon R. ENGLAND, Secretary of the Navy, et al., Defendants.**

**Civ.A. No. 00–0566 RMU.**

United States District Court,
District of Columbia.

Aug. 19, 2002.

Arthur A. Schulcz, Sr., Bradley L. Bolinger, Vienna, VA, for plaintiffs.

Thomas E. Caballero, Michael Q. Hyde, U.S. Department of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

URBINA, District Judge.

### GRANTING THE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### I. INTRODUCTION

This case comes before the court on the plaintiffs' motion for class certification. The plaintiffs, current and former Navy chaplains, bring this suit alleging that the Navy's policies and practices favor one religion over another in violation of the First Amendment's Establishment and Free Exercise Clauses, and in violation of the Fifth Amendment's Equal Protection Clause. Specifically, the plaintiffs charge that the hiring, retention, and promotion policies of the Navy Chaplain Corps demonstrate an unconstitutional endorsement of liturgical Christian sects over non-liturgical Christian sects.[1] For the reasons that follow, the court grants the plaintiffs' motion for class certification.

### II. BACKGROUND

The court has consolidated this case with a related case, *Chaplaincy v. England*, Dkt. No. 99cv2945, for purposes of all pretrial motions.[2] In the *Chaplaincy* case, the plaintiffs are an endorsing agency for military chaplains and seven of its individual mem-

---

1. For an explanation of the differences between liturgical and non-liturgical Christian sects, see the court's Memorandum Opinion issued January 10, 2002. *Adair v. England*, 183 F.Supp.2d 31 (D.D.C.2002).

2. In January 2001, the court's Calendar Committee transferred both cases from Judge June Green to this member of the court. In an order

dated September 26, 2000, Judge Green accepted the parties' joint recommendation and consolidated both cases for purposes of the pretrial pending motions. Order dated Sept. 26, 2000. The parties and the court have continued to treat these cases as consolidated for purposes of all pretrial motions.

bers. In the *Adair* case, the plaintiffs are 17 current and former non-liturgical chaplains in the Department of the Navy ("the defendants," "Navy," or "DON"). In both cases, the plaintiffs allege that the Navy has established and maintained an unconstitutional religious quota system for promotion, assignments, and retention of Navy chaplains, in violation of both the Establishment Clause and the Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fifth Amendment. Specifically, the plaintiffs allege that the Navy's policies and practices favor liturgical Christian chaplains over non-liturgical Christian chaplains.[3]

On January 10, 2002, the court issued a Memorandum Opinion granting in part and denying in part the defendants' motion to dismiss. *Adair v. England*, 183 F.Supp.2d 31 (D.D.C.2002). The court held that: (1) strict scrutiny applies to the plaintiffs' First Amendment and equal protection claims; (2) the plaintiffs did not need to exhaust their administrative remedies before filing suit in federal court; (3) the plaintiffs had stated a claim that the Navy's hiring and retention policies violate the Establishment Clause; (4) the Navy's practices of allowing chaplains to rate other chaplains for promotions and of allowing multiple chaplains to serve on promotion boards do not violate the Establishment Clause; (5) the plaintiffs had stated a claim that the Navy's practice of displaying the religious identity of chaplains up for promotion violates the Establishment Clause and Free Exercise Clause; (6) the Navy's practice of having only "General Protestant" religious services could violate the Establishment Clause; and (7) the plaintiffs had stated a free speech claim. *Id.*

On March 26, 2002, the plaintiffs filed a motion for class certification pursuant to Federal Rule of Civil Procedure 23. The plaintiffs include 17 former or current non-liturgical Christian chaplains and at least 17

additional non-liturgical chaplains who seek to join this litigation.[4] Pls.' Mot. to Certify the Class ("Pls.' Mot.") at 3. The plaintiffs ask the court to certify a class "defined as all Navy non-liturgical Protestant chaplains who served in the Navy at any time since fiscal year 1988." *Id.* at 4. The plaintiffs contend that the putative class "has been adversely affected by the Navy's and the Corps' culture of unlawful bias and prejudice, including the Navy's use of religious quotas not related to a compelling Navy objective." *Id.* The defendants oppose the plaintiffs' motion.

## III. ANALYSIS

### A. Legal Standard for a Motion for Class Certification

Federal Rule of Civil Procedure 23 sets forth the requirements for class certification. FED.R.CIV.P. 23. Congress designed the rule to promote the efficient and economical conduct of litigation. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). A class action generally enables courts "to treat common claims together, obviating the need for repeated adjudications of the same issues." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir.1995). An exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only, the class action is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quotations omitted). A party who seeks to certify a class bears the burden of establishing Rule 23's requirements. *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir.1997); *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988).

---

3. For the sake of brevity, the court will not reiterate the extensive factual and procedural history, and the numerous allegations in these cases. For a detailed discussion of these matters in the *Adair* and *Chaplaincy* cases, see the court's January 10, 2002 Memorandum Opinion. *Adair*, 183 F.Supp.2d at 35–45. For a detailed discus-

sion of the factual background of the *Chaplaincy* case, see Judge Green's August 17, 2000 Memorandum Opinion at 2–7.

4. This figure does not include the seven chaplain plaintiffs in the *Chaplaincy* case. Pls.' Mot. at 3.

**8**

To obtain class certification, a party must first demonstrate that it can meet the four prerequisites of Rule 23(a). FED.R.CIV.P. 23(a); *Falcon*, 457 U.S. at 156, 102 S.Ct. 2364. Those requirements are that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED.R.CIV.P. 23(a). Once a party has demonstrated numerosity, commonality, typicality, and adequacy, it still must satisfy one prong of Rule 23(b) to warrant class certification. FED.R.CIV.P. 23(b).

In determining whether to certify a class, the court should not consider the underlying merits of the plaintiff's claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 14, 21 (D.D.C.2001). Noting that Rule 23(c)(1) instructs district courts to rule on class status "[a]s soon as practicable after the commencement of an action brought as a class action," the Supreme Court has explained that in "determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen*, 417 U.S. at 178, 94 S.Ct. 2140 (quotation omitted); *see also In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 303 (E.D.Mich.2001) ("A Rule 23 determination is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the substantive merits of its claim.") (quotation omitted). Moreover, the court accepts as true the allegations set forth in the complaint. *Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978); *In re Lorazepam*, 202 F.R.D. at 21. Lastly, "when a court is in doubt as to whether to certify a class action, it should err

in favor of allowing a class." *In re Cardizem*, 200 F.R.D. at 303 (quotation omitted).

## C. The Plaintiffs Satisfy Rule 23's Requirements

Because the plaintiffs in this case satisfy all four of Rule 23(a)'s prerequisites as well as Rule 23(b)(1)(A), the court rules that they may proceed in this litigation as a class action. FED.R.CIV.P. 23.

### .1. Rule 23(a) Prerequisites

#### a. Numerosity

■ The first prerequisite for class certification is that the class be "so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). The plaintiffs need not provide a specific number as long as they give a reasonable basis for their estimate. *In re Lorazepam*, 202 F.R.D. at 26. In this case, there are at least 34 parties who desire to be or who are already named as plaintiffs in the complaint.[5] In addition, the plaintiffs point to the Navy's own statistics to demonstrate that the class would probably include at least 700 and as many as 1,000 members. Pls.' Reply at 6–7. Accordingly, the plaintiffs have provided a "reasonable basis for the[ir] estimate." *In re Lorazepam*, 202 F.R.D. at 26. Because of the large numbers of possible class members, joinder of all members is impracticable. FED.R.CIV.P. 23(a)(1). Moreover, because Navy chaplains work in locations around the world, joinder is especially difficult and the class action device is more appropriate. Pls.' Mot. at 7; *In re Lorazepam*, 202 F.R.D. at 26. In their opposition, the defendants essentially concede the numerosity prong and focus their attacks on the other three prongs of Rule 23(a). Defs.' Opp'n to Pls.' Mot. (Defs.' Opp'n) at 35. The court concludes that the plaintiffs have satisfied the numerosity requirement.

#### b. Commonality and Typicality

The Supreme Court has explained that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. 2364. Ac-

---

5. While only 17 plaintiffs are currently named in the complaint, the court ruled at the February 7, 2002 status hearing that the additional 17 plaintiffs could join the suit. Feb. 7, 2002 Status Hr'g; Pls.' Mot. at 7.

cordingly, the court treats these two requirements together. The defendants follow the same approach and choose this area as their main target in their efforts to denude the plaintiffs' quest for class certification. Indeed, the defendants devote 28 pages out of their 40–page brief to their argument that the plaintiffs have not established the commonality or typicality of their claims with the putative class. Defs.' Opp'n at 5–30.

The commonality prerequisite mandates that there are questions of law or fact common to the class. FED.R.CIV.P. 23(a)(2). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994); *see also Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir.1997); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 166–67 (2d Cir.1987); *In re Lorazepam,* 202 F.R.D. at 26.

The defendants go to great lengths to try to show how different the individual plaintiffs' claims are. For example, the defendants note that some plaintiffs claim they suffered from a hostile work environment and correctly point out that only a small number of plaintiffs allege that the Navy constructively discharged them from active duty. Defs.' Opp'n at 7. While some plaintiffs allege that the Navy failed to promote them for improper reasons, others claim that the Navy forced them into early retirement. *Id.* The defendants also assert that the Navy is a decentralized entity, with "numerous decision-makers at almost 500 duty stations." *Id.* at 14. In the defendants' view, therefore, the "plaintiffs have offered up various individual allegations of discrimination, each entailing factual situations and raising legal questions that are neither common across the class nor typical of the claims of the putative class members." *Id.* at 8.

The defendants also spend substantial time arguing the merits of the plaintiffs' claims. *E.g.,* Defs.' Opp'n at 9–12 ("... no candidates were disapproved because of their religious denomination or faith group"). As noted previously, however, a court considering the merits of a motion for class certification should not assess *the merits of the moving party's claims* and must accept the moving party's claims as true for purposes of the motion. *Eisen,* 417 U.S. at 177–78, 94 S.Ct. 2140; *Shelter Realty Corp.,* 574 F.2d at 661 n. 15. "A Rule 23 determination is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the substantive merits of its claim." *In re Cardizem,* 200 F.R.D. at 303 (quotation omitted). Accordingly, the court need not assess this line of argument made by the defendants.

In their challenge to the motion for class certification, the defendants lean heavily on the Supreme Court case of *General Telephone Company of Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). This reliance is misplaced. In *Falcon,* the Court held that the district court had erred in permitting a plaintiff to maintain a class action on behalf of all Mexican–American job applicants whom the company did not hire. *Id.* at 149, 102 S.Ct. 2364. Brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.,* the case involved a Mexican–American plaintiff who claimed that the company passed him over for promotions in favor of white employees with less seniority because of unlawful discrimination based on national origin. *Id.* at 149–50, 102 S.Ct. 2364.

The Court ruled that this "across-the-board" attack against the defendants' allegedly discriminatory employment practices could not proceed as a class because the plaintiff had not established "that the adjudication of his claim of discrimination in promotion would require the decision of any common question concerning the failure of [the defendant] to hire more Mexican–Americans." *Id.* at 158, 102 S.Ct. 2364. The Court noted that the plaintiff had failed to make "any specific presentation identifying the questions of law or fact that were common to the claims of [the plaintiff] and of the members of the class he sought to represent...." *Id.* Thus, the district court mistakenly presumed that the plaintiff's claim was "typical of other claims" against the defendant by Mexican–American employees and applicants. *Id.* at 158–59, 102 S.Ct. 2364. Fearing the slippery slope, the Court expressed

concern that allowing this case to proceed as a class action would mean that one allegation of specific discriminatory treatment could make "every Title VII case . . . a potential companywide class action." *Id.* at 159, 102 S.Ct. 2364.

*Falcon* is easily distinguishable from the case at bar. Most importantly, in the former case, there was only one plaintiff. *Id.* at 149, 102 S.Ct. 2364. That plaintiff failed to identify any other specific plaintiff who allegedly endured similarly disparate treatment. *Id.* In contrast, the plaintiffs in this case have already named 34 people who have suffered from the Navy's allegedly wrongful pattern of religious discrimination.[6] Pls.' Reply at 34. Moreover, as this court has previously noted in its January 10, 2002 Memorandum Opinion ruling on the defendants' motion to dismiss, "the plaintiffs provide hard statistics" in support of their claims challenging the Navy's hiring and retention practices of chaplains. *Adair*, 183 F.Supp.2d at 56. Accordingly, the plaintiffs' allegations—which the court accepts as true for the purposes of this motion, *Shelter Realty Corp.*, 574 F.2d at 661 n. 15—easily satisfy *Falcon's* requirement that the plaintiffs make a "specific presentation identifying the questions of law or fact that [are] common to the claims of [the plaintiff] and of members of the class [the plaintiff seeks] to represent. . . ." *Falcon*, 457 U.S. at 158, 102 S.Ct. 2364.

In addition, the defendants' contention that individual differences among the plaintiffs should prevent certification of a class because of a lack of commonality misses the bigger picture. As the plaintiffs correctly proffer, the court has already said in reference to the plaintiffs' claims involving the free exercise of religion and freedom of religious speech:

> The *overriding theme that runs through all the claims relating to the plaintiffs' free exercise of their religion* is that the Navy has adopted and implemented policies and practices that effectively silence non-liturgical Christian chaplains.
> These claims include: identifying a chaplain-promotion candidate's religion to the chaplain promotion board; forcing non-liturgical churches off base into "sub-standard facilities which were inadequate to hold the number of those wanting to attend, while Catholic and liturgical Protestants enjoyed spacious on post facilities,"; senior Catholic and liturgical Protestants chaplains intentionally giving some non-liturgical Christian chaplains lower performance ratings than similarly situated Catholic and liturgical Protestant chaplains "solely on the basis of their religious identification and beliefs despite evidence of the non-liturgical chaplains' superior performance" . . .
> In all these allegations, the plaintiffs charge that because the Navy treats non-liturgical Christian chaplains less favorably, the defendants' policies and practices serve to impair or impede the plaintiffs' free exercise of religion.

*Adair*, 183 F.Supp.2d at 65 (emphasis added). The court has already characterized the plaintiffs' free exercise claims as having an "overriding theme." *Id.* This characterization applies equally to the plaintiffs' Establishment Clause and Equal Protection Clause claims. Consequently, the named plaintiffs and the members of the putative class share several of the same legal claims, all relating to the Navy's allegedly unconstitutional system of religious preferences.

In the final analysis, the court agrees with the plaintiffs that the defendants "mis-characterize plaintiffs [sic] claims as merely a series of individualized incidents rather than the results of a common policy." Pls.' Reply at 1. What the plaintiffs actually allege is a pervasive pattern of religious preferences favoring liturgical Christian chaplains over non-liturgical Christian chaplains. *E.g.*, Compl. at 29–30. All the comparatively minor individual differences among the plaintiffs' claims shoot out like spokes on a wheel from the tire's center—the Navy's alleged policies and practices that supposedly foster unconstitutional religious preferences.

"The commonality requirement will be satisfied if the named plaintiffs share at least

---

**6.** Once again, this figure does not include the seven additional plaintiffs in the consolidated

*Chaplaincy* case.

one question of fact or law with the grievances of the prospective class." *Baby Neal,* 43 F.3d at 56; *see also Lightbourn,* 118 F.3d at 426; *In re "Agent Orange" Prod. Liab. Lit.,* 818 F.2d at 166–67; *In re Lorazepam,* 202 F.R.D. at 26. Because the plaintiffs have demonstrated that the named non-liturgical Christian chaplain plaintiffs share several central questions of constitutional law with the grievances of the prospective class of non-liturgical Christian chaplain plaintiffs, they have satisfied the commonality requirement. *Id.*

■ For similar reasons, the plaintiffs have also satisfied the requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED.R.CIV.P. 23(a)(3). As the Supreme Court has explained, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364. Consequently, because each class member's claim would arise from the same course of events that led to the claims of the representative parties, and because each class member would make similar legal arguments to prove the defendant's liability, the plaintiffs have satisfied Rule 23(a)(3)'s typicality requirement. *In re Lorazepam,* 202 F.R.D. at 27.

### c. Adequacy

■ The final prerequisite for class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The D.C. Circuit has stated that "[t]wo criteria for determining the adequacy of representation are generally recognized: 1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. Dist. of Columbia,* 117 F.3d 571, 575 (D.C.Cir.1997) (quotation omitted).

The defendants "do not contest the adequacy of counsel's representation at this time." Defs.' Opp'n at 34 n. 19. Instead, the defendants charge that the named plaintiffs would have conflicting interests with the pu-

tative class. *Id.* at 33–34. In support of this argument, the defendants maintain that because some non-liturgical Christian chaplains sat on chaplain promotion boards that decided not to promote non-liturgical Christian chaplains, members of the class would have conflicting interests. *Id.* at 33. More generally, they contend that the mix of supervisory and non-supervisory chaplains militates against adequacy. *Id.* at 34.

The plaintiffs effectively counter, however, that the law allows those who become participants in an allegedly unlawful scheme to challenge the legality of the scheme and even to raise the right of third parties in doing so. Pls.' Reply at 24 (citing *Sec'y of State v. Joseph H. Munson Co.,* 467 U.S. 947, 956–57, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (stating that doctors could challenge abortion laws on behalf of their patients)). The court concludes that the defendants' concerns about conflicts within the class are unfounded and that the plaintiffs have satisfied Rule 23(a)(4)'s adequacy requirement.

### 2. Rule 23(b)

Because the plaintiffs have satisfied Rule 23(a)'s four prerequisites to a class action, the court must now evaluate whether the plaintiffs can maintain a class action pursuant to one of Rule 23(b)'s subdivisions. FED. R.CIV.P. 23(b). The plaintiffs submit that this action is maintainable as a class action under Rule 23(b)(1)(A), (b)(2), and (b)(3). Pls.' Mot. at 17–29. The court agrees with the plaintiffs that this action could proceed under all three categories. Having said that, the court concludes that the most appropriate category is under Rule 23(b)(1)(A).

■ "When either subsection (b)(1) or (b)(2) is applicable, ... b(3) should not be used, so as to avoid unnecessary inconsistencies and compromises in future litigation." *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1175 (8th Cir.1995); *In re A.H. Robins Co.,* 880 F.2d 709, 728 (4th Cir.1989) (stating that certification should be made under (b)(1) if action may also qualify under (b)(3)), *overruled on other grounds, Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); 5 Moore's Federal Practice, § 23.40[2] (3d ed. 2000) ("If a

**12**

choice exists between certification under Rule 23(b)(3) and either Rule 23(b)(1) or (b)(2), courts generally certify the class action pursuant to (b)(1) or (b)(2)"); *see also Eubanks v. Billington*, 110 F.3d 87, 91–96 (D.C.Cir.1997).

█ Federal Rule of Civil Procedure 23(b)(1)(A) provides:

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing class

FED.R.CIV.P. 23(b)(1)(A). Rule 23(b)(1)(A) certification is appropriate when the class seeks injunctive or declaratory relief to change an alleged ongoing course of conduct that is either legal or illegal as to all members of the class. 5 Moore's Federal Practice § 23.41[4] (3d ed.2000). "Rule 23(b)(1)(A) certification is most common" in cases in which the class seeks declaratory or injunctive relief against the government "to provide unitary treatment to all members of a defined group." *Id.;* Pls.' Mot. at 18.

That is precisely the situation in the case at bar because the plaintiffs seek declaratory relief and a permanent injunction. *Adair,* 183 F.Supp.2d at 45. As this court has previously noted, in their complaint, the plaintiffs seek the following requested relief against the Navy, among other things:

they ask the court to strike down: the Navy's alleged thirds policy; the Navy's practice of placing more than one chaplain on chaplain promotion boards; the Navy's practice of allowing the Chief of Chaplains to determine the makeup of a promotion board or a [Selective Early Retirement Board ("SERB")]; the Navy's policy of

identifying the faith group of each chaplain to be considered by promotion board or SERBs; and the Navy's alleged endorsement of "an official liturgical General Protestant service." In addition, the plaintiffs call for an end to the alleged "dominance of the Navy's senior ranks and key billets by liturgical Protestant chaplains, out of all proportion to their actual percentages in the Navy," as well as the over-representation of liturgical Christian chaplains in the entire Chaplain Corps. In essence, the plaintiffs ask the court for an order directing the Navy to bring both the entire Chaplain Corps and its senior officials "into line with the Navy's religious demographics."

*Id.* (citations to the plaintiffs' complaint omitted).[7] In short, the plaintiffs primarily seek declaratory and injunctive relief. If the court did not certify this case as a class action, there would be a substantial risk that if other potential class members brought separate actions, courts might render "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct" for the Navy. FED.R.CIV.P. 23(b)(1)(A). The plaintiffs persuasively note that three other chaplain cases already exist addressing the same or similar issues.[8] Pls.' Mot. at 19. According to the plaintiffs, the federal courts in California dealing with these cases have already rendered somewhat different decisions on issues similar to those addressed in the case at bar. *Id.* at 19–20. The plaintiffs correctly point out that these courts' "differing results impose different standards on the Navy." *Id.* at 20. Clearly, the Navy needs to have only one system with uniform policies because it "is required to treat all class members alike." *Larionoff v. United States,* 533 F.2d 1167, 1181 n. 36 (D.C.Cir.1976); Pls.' Mot. at 18. Different results from different federal courts could well lead to a scenario in which the Navy has to follow "incompatible standards of conduct." FED.R.CIV.P. 23(b)(1)(A). For all these reasons, the court

7. The court's January 10, 2002 Memorandum Opinion granted the defendants' motion to dismiss some of these claims. *Adair,* 183 F.Supp.2d 31.

8. This includes the *Chaplaincy* case, which, as noted before, has been consolidated with this case for the purpose of resolving all pre-trial motions.

determines that this litigation may proceed as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1)(A).

### D. Class Definition

Having determined that this lawsuit may proceed as a class action, the court must now define the specific class.[9] Before determining whether to accept the plaintiffs' requested definition of the class—e.g., all non-liturgical Christian chaplains who served in the Navy since fiscal year 1988—the court directs the parties to brief one discrete issue. Specifically, the court orders the parties to submit briefs not to exceed five pages double-spaced addressing this question: How should Judge Green's August 17, 2000 Memorandum Opinion ruling that the chaplain plaintiffs could seek only prospective, and not remedial, relief affect the size of the class, if at all? The parties shall submit these briefs by September 20, 2002.

### IV. CONCLUSION

For all these reasons, the court grants the plaintiffs' motion for class certification. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 19 day of August, 2002.

### *ORDER*

#### GRANTING THE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this _____ day of August, 2002, it is

**ORDERED** that the plaintiffs' motion for class certification is **GRANTED;** and it is

**FURTHER ORDERED** that the court will define the specific class of plaintiffs after the parties each submit a brief not to exceed

five pages double-spaced by September 20, 2002.

**SO ORDERED.**

9. Once the court defines the class, the court will exercise its discretion to require the plaintiffs to give notice to all class members in a fashion to be determined after consulting with the parties. FED.R.CIV.P. 23(d). The court will also defer the issues of naming class representatives and of whether it will allow any members of the class to opt out as per the D.C. Circuit's reasoning in *Eubanks,* 110 F.3d at 91–96. The court will consider the parties' positions on these issues as well.