Robert H. ADAIR et al., Plaintiffs,

v.

Gordon R. ENGLAND, Secretary of the Navy, et al., Defendants.

Chaplaincy of Full Gospel Churches et al., Plaintiffs,

v.

Gordon R. England, Secretary of the Navy, et al., Defendants.

Nos. Civ.A. 00–0566(RMU), Civ.A. 99–2945(RMU).

United States District Court, District of Columbia.

Aug. 27, 2002.

Arthur A. Schulcz, Sr., Bradley L. Bolinger, Vienna, VA, for Plaintiffs.

Thomas E. Caballero, Michael Q. Hyde, U.S. Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM OPINION

URBINA, District Judge.

DENYING WITHOUT PREJUDICE THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;

DENYING WITHOUT PREJUDICE THE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### I. INTRODUCTION

These cases come before the court on the parties' cross-motions for partial summary judgment. The plaintiffs, current and former Navy chaplains and an ecclesiastical endorsing agency for military chaplains, bring these suits alleging that the Navy's policies and practices favor one religious denomination over another in violation of the First Amendment's Establishment and Free Exercise Clauses, and in violation of the Fifth Amendment's Equal Protection Clause. Specifically, the plaintiffs charge that the hiring, retention, and promotion policies of the Navy Chaplain Corps demonstrate an unconstitutional endorsement of liturgical Christian sects over non-liturgical Christian sects.[1] For the reasons that follow, the court denies without prejudice both the plaintiffs' and the defendants' motions for partial summary judgment.

### II. BACKGROUND

Although the above-captioned cases are not consolidated for all purposes, the court has consolidated them for purposes of all pretrial pending motions.[2] In the *Chaplaincy* case, the plaintiffs are an endorsing agency for military chaplains and seven of its individual members. In the *Adair* case, the plaintiffs are 17 current and former non-liturgical chaplains in the Department of the Navy ("the defendants," "Navy," or "DON"). In both cases, the plaintiffs allege that the Navy has established and maintained an unconstitutional religious quota system for promotion, assignments, and retention of Navy chaplains, in violation of both the Establishment Clause and the Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fifth Amendment. Specifically, the plaintiffs allege that the Navy's policies and practices favor liturgical Christian chaplains over non-liturgical Christian chaplains.[3]

1. For an explanation of the differences between liturgical and non-liturgical Christian sects, see the court's Memorandum Opinion issued January 10, 2002. *Adair v. England*, 183 F.Supp.2d 31 (D.D.C.2002).

2. In January 2001, the court's Calendar Committee transferred both of these cases from Judge June Green to this member of the court. In an order dated September 26, 2000, Judge Green accepted the parties' joint recommendation and consolidated the two cases for purposes of the pretrial pending motions. Order dated Sept. 26, 2000. The

parties and the court have continued to treat these cases as consolidated for purposes of all pretrial motions.

3. The court reviews many factual issues herein for purposes of the cross-motions for partial summary judgment. For a more detailed discussion of the extensive factual and procedural history, and the numerous allegations in the *Adair* and *Chaplaincy* cases, see the court's January 10, 2002 Memorandum Opinion. *Adair*, 183 F.Supp.2d at 35–45. For a detailed discussion of the factual background of the *Chaplaincy* case, see Judge Green's

On January 10, 2002, the court issued a Memorandum Opinion granting in part and denying in part the defendants' motion to dismiss. *Adair v. England*, 183 F.Supp.2d 31 (D.D.C.2002). The court held that: (1) strict scrutiny applies to the plaintiffs' First Amendment and equal protection claims; (2) the plaintiffs did not need to exhaust their administrative remedies before filing suit in federal court; (3) the plaintiffs had stated a claim that the Navy's hiring and retention policies violate the Establishment Clause; (4) the Navy's practices of allowing chaplains to rate other chaplains for promotions and of allowing multiple chaplains to serve on promotion boards do not violate the Establishment Clause; (5) the plaintiffs had stated a claim that the Navy's practice of displaying the religious identity of chaplains up for promotion violates the Establishment Clause and Free Exercise Clause; (6) the Navy's practice of having only "General Protestant" religious services could violate the Establishment Clause; and (7) the plaintiffs had stated a free speech claim. *Id.*

The court has become very well acquainted with these cases. At a status hearing on February 7, 2002, the court heard from the parties about how they wished to proceed in these cases and then set forth a schedule for the briefing of various issues. Order dated Feb. 7, 2002. Since that time, the court has issued several rulings. First, the court denied without prejudice the plaintiffs' motion for a preliminary injunction to prevent the government from either censoring or compelling their speech by requiring them to recruit new members to the Navy's Chaplain Corps. *Adair v.*

*England*, 193 F.Supp.2d 196 (D.D.C.2002). The court concluded that it lacked jurisdiction over the claims that the plaintiffs set forth in their motion for a preliminary injunction since neither complaint included these allegations. Thus, the court gave the plaintiffs leave to supplement their complaints.[4] *Id.* Second, the court denied the plaintiffs' motion for a preliminary injunction to delay the Navy's chaplain promotion boards until after the court ruled on the plaintiffs' motion for partial summary judgment on the constitutionality of those boards. *Adair v. England*, 217 F.Supp.2d 1 (D.D.C.2002). Third, the court denied the plaintiffs' motion for relief from judgment from two aspects of the court's January 10, 2002 Memorandum Opinion. *Adair v. England*, 209 F.R.D. 1 (D.D.C.2002). Fourth, the court granted the plaintiffs' motion for class certification. *Adair v. England*, 209 F.R.D. 5 (D.D.C. 2002).

Despite the fact that the parties have not begun discovery in these cases, they decided to file motions for partial summary judgment on certain issues. The cross-motions for partial summary judgment became ripe in June 2002.

The plaintiffs move for partial summary judgment on issues related to the hiring and promotion of chaplains, challenging the legality of: (1) the policies by which the Navy hires and allocates chaplain accessions[5] among faith groups; (2) the Chaplain Corps structure resulting from these policies, (3) the identification of a chaplain's faith group to chaplain promotion board members, and (4) the Chap-

---

August 17, 2000 Memorandum Opinion at 2–7.

4. Pursuant to Federal Rule of Civil Procedure 15(d), the plaintiffs did supplement their complaints on April 15, 2002.

5. "The term accessions refers to individuals the Chaplain Corps brings into the Navy, either active duty or reserve, as commissioned officers during the current fiscal year." Defs.' Ex. 6 at 2.

lain Corps' promotion system. Pls.' Mot. at 1. In short, the plaintiffs present evidence that there are substantially more liturgical Christians in the Chaplain Corps than there are in the Navy as a whole, and argue that the Navy has unconstitutionally maintained a thirds policy, whereby liturgical Christians, non-liturgical Christians, and Catholics each receive one-third of the Chaplain Corps slots in hirings and promotions. *Id.* at 5–6, 8 (citing Pls.' Exs. 5, 6).

Before fiscal year 1988, the Navy used objective criteria based on national religious demographics to determine chaplain accessions and recruiting goals, according to the plaintiffs. *Id.* at 7. The goal was to have the Chaplain Corps reflect the United States' religious makeup. *Id.* In fiscal year 1988, however, the Navy allegedly adopted subjective quotas—the thirds policy—based on concerns about a shift to a non-liturgical majority. *Id.*

More specifically, the plaintiffs charge that the thirds policy still prevails in accessions but not in promotions because of the consistent shortage of Catholics. Pls.' Mot. at 33. The plaintiffs do assert, however, that a quota system still exists for promotions. *Id.* "The gross over-representation of Protestant liturgical chaplains takes place at every rank. For example, in 2001, Protestant liturgicals were 7.46% of DON but in the Chaplain Corps they were 34.57% of Captains, 36.36% of Commander [sic], 32.02% of [Lieutenant Commanders], and 37.50% of Lieutenants." *Id.* at 9 (citing Pls.' Ex. 6).

The parties share a rare point of factual agreement when the defendants admit that until April 2000, the Navy provided a promotion candidate's religious denomination to chaplain promotion board members in the form of a three-digit Additional Qualification Designator ("AQD") code. Pls.' Reply at 29; Defs.' Mot. at 13, Ex. 19 ¶¶ 4–5. The plaintiffs charge that the practice of revealing faith group identifiers effectively tainted the chaplain promotion boards that had access to the AQD codes and thus they ask the court to rescind some of the actions of these boards. Pls.' Reply at 30. The defendants counter that the plaintiffs have failed to provide any evidence that the Navy's previous display of AQD codes to promotion boards was a purposeful attempt to facilitate discrimination or any evidence that those codes were used to discriminate. Defs.' Reply at 14.

Firing back in their cross-motion, the defendants state that the Chaplain Corps "does not currently establish accession targets based on faith group categories, nor does it otherwise take into account faith group in making accession decisions. In addition, even when the Chaplain Corps did set such 'targets,' those targets served as goals and were never quotas." Defs.' Mot. at 1. The defendants contend that there is no basis to conclude that those targets "limited the accession of any chaplains. At least since 1990, the Navy has never denied accessions to a chaplain because of that chaplain's faith group." *Id.* In addition, the defendants note that since fiscal year 2001, "the Chaplain Corps has not broken down its accession goals by faith group. Religious denomination and/or faith group played no part in establishing the accessions plans for fiscal years 2001 and 2002." *Id.* at 8–9.

As of July 2001, the Navy submits that its Chaplain Corps consisted of 854 chaplain officers, of whom 298 (or 34.89 percent) were liturgical Christians, 338 (or 39.58 percent) were non-liturgical Christians, and 171 (or 20.02 percent) were Roman Catholic. *Id.* at 3–4 (citing Defs.' Statement of Material Facts as to Which

There Is No Genuine Issue).[6]

Moreover, in terms of the plaintiffs' claims that liturgical Christian chaplains dominate chaplain promotion boards, the defendants state that beginning with fiscal year 2003, the chief of naval operations, with the approval of the Secretary the Navy, ordered that these boards (the first of which met in February 2002) be comprised of five unrestricted line officers (who are not members of the Chaplain Corps) and no more than two Chaplain Corps officers.[7] Defs.' Mot at 15.

In addition, of the 194 chaplain members of the 43 chaplain promotion boards from fiscal year 1994 to 2002, 69 were liturgical Christian, 62 were non-liturgical Christian, 46 were Roman Catholic, and 17 were Special Worship.[8] *Id.* Of the 43 chaplain promotion boards during this time frame, "there was a Roman Catholic chaplain on every board over this period except one. There was a liturgical Protestant chaplain on every board over this period except one. There was a non-liturgical chaplain member [on] every board except one for this period." *Id.* at 15–16.

In their efforts to defend the Corps' promotion system, the Navy proffers that during the 12–year period for promotion boards for fiscal years 1991 to 2002, the Navy selected non-liturgical Christian chaplains for Captain, Commander, and Lieutenant Commander promotion boards at a rate of 53.1 percent, i.e., 53.1 percent of in-zone non-liturgical chaplains were selected by the promotion boards. Defs.' Ex. G. Liturgical Christian chaplains had a selection rate of 53.6 percent, and Roman Catholic chaplains had a 52.2 percent rate. *Id.* Because the plaintiffs "cannot rebut the evidence submitted by defendants that shows that non-liturgical Christian chaplains did not suffer discrimination in accessions, promotions, or in the structure of the Navy Chaplain Corps ... the [c]ourt should deny plaintiffs' motion and grant defendants' cross-motion for partial summary judgment." Defs.' Mot. at 2.

The court now turns to the analysis of the parties' cross-motions for partial summary judgment.

## III. ANALYSIS

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

**6.** Despite the fact that the defendants list this statistical breakdown in their section entitled "Statement of Material Facts as to Which There Is No Genuine Issue," the plaintiffs do dispute this fact, taking issue with the defendants' categorization of denominations that fall into the liturgical and non-liturgical faith groups. Pls.' Ex. F. On a related note, the Navy also contends in its Statement of Material Facts as to Which There Is No Genuine Issue that the Chaplain Corps must be flexible in the representation of faith groups and cannot employ a proportional representation scheme. *Id.* at 6. The court reminds the parties that this does not qualify as an appropriate "fact" to be listed in a statement of facts not in dispute. LCvR 56.1. This is not a fact. Indeed, this amounts to an argument on an issue that the plaintiffs vigorously contest.

**7.** By "line community," the parties refer to the operational service members as opposed to service members from the professional communities or the Chaplain Corps. *Adair,* 183 F.Supp.2d at 36 n. 3.

**8.** For an explanation of which faith groups comprise the Navy's Special Worship category, see the court's Memorandum Opinion issued January 10, 2002. *Adair,* 183 F.Supp.2d 31.

Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,*

477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

## B. The Plaintiffs Must Satisfy an Initial Burden Before the Court Applies Strict Scrutiny

In its January 10, 2002 Memorandum Opinion resolving the defendants' motion to dismiss, the court discussed at length the appropriate standard of review for these cases, holding that strict scrutiny would apply to the plaintiffs' claims that the Navy's policies and practices violate the Establishment and Free Exercise Clauses of the First Amendment and the Equal Protection Clause of the Fifth Amendment. *Adair,* 183 F.Supp.2d at 46–53. Now that the case has reached the summary judgment stage, the parties disagree on when the court should apply the strict scrutiny test.

The defendants argue that the plaintiffs first must give proof of actual discrimination before the defendant has to defend the Chaplain Corps' policies as narrowly tailored to further a compelling governmental interest. Defs.' Mot. at 24. They believe that the plaintiffs must prove the existence of such discrimination before the burden of proof shifts back to the defendants and the court applies strict scrutiny. *Id.* According to the defendants, only after the plaintiffs have met their burden of satisfying the threshold inquiry—i.e., do the Chaplain Corps' policies actually discriminate against non-liturgicals or endorse the religious beliefs of liturgical Christians and Roman Catholics?—does the burden of proof shift to the defendants to justify the policies as narrowly tailored to meet a compelling governmental objective. *Id.* at 25.

For example, although the Navy admits that it displayed the faith group identifier codes to chaplain promotion boards before April 2000, the defendants maintain that this is not enough to establish denomina-

tional discrimination in the promotion process because the plaintiffs have failed to show that the Navy used those codes to discriminate on the basis of religion. *Id.* at 39–40. In addition, the defendants aver that the mere fact that the Navy tracked the faith group category of incoming chaplains to monitor the Corps' composition does not trigger strict scrutiny. Defs.' Reply at 5. "The question is whether the Navy inappropriately use[d] that classification to discriminate among chaplains." *Id.*

As a procedural matter, the defendants submit that because the court's January 10, 2002 Memorandum Opinion addressed a motion to dismiss, the court had to accept the plaintiffs' facts as true and thus had to evaluate what the appropriate legal standard would be, presuming the plaintiffs' facts about the Navy's alleged religious preferences for liturgical Christians to be true. Defs.' Reply at 3 (citing *Adair*, 183 F.Supp.2d at 45–46). Now that the case has reached the summary-judgment stage, however, the defendants suggest that the plaintiffs may no longer rely on that presumption and first must demonstrate that the challenged policies discriminate on the basis of religion. *Id.* at 1, 3.

Conversely, the plaintiffs contend that the defendants' argument "completely disregards the [c]ourt's well-reasoned discussion of the applicable Supreme Court precedent that establishes strict-scrutiny as the proper review for the government policies challenged here under the Establishment, Free Exercise and Equal Protection Clauses." Pls.' Reply at 2. In other words, the Navy's claim that strict scrutiny "has not attached" yet and that it will attach only after the plaintiffs have shown that the challenged laws or policies are not neutral and of general applicability ignores the court's January 10, 2002 Memorandum Opinion. *Id.* at 3.

The plaintiffs note that the court has already pointed out that in cases in which the government allegedly prefers one religious denomination over another, the more demanding strict-scrutiny analysis applies. *Id.* (citing *Adair*, 183 F.Supp.2d at 48 (citing *Larson v. Valente*, 456 U.S. 228, 246–47, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982))). In this case, the plaintiffs maintain that they "are not challenging facially neutral policies but policies based on religious classifications." *Id.* at 4. Thus, the non-liturgical Christian chaplains declare that an initial showing of a denominational preference is not the relevant Establishment or Free Exercise Clause test when religious classifications are at issue. *Id.* at 7.

For the most part, the court agrees with the defendants. As to the main issue, the defendants properly frame the procedural matter. In ruling on the motion to dismiss, the court must accept the plaintiffs' claims as true and thus the court ruled in its January 10, 2002 Memorandum Opinion that, accepting the plaintiffs' claims about the Navy's alleged use of denominational preferences, the court would evaluate these claims under strict scrutiny. *Adair*, 183 F.Supp.2d at 46–53. Now that the case has progressed to the summary-judgment stage, however, the court can grant a motion for summary judgment only if the moving party shows that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

Crucially, in *Larson*, the Supreme Court held that "when we are *presented with a state law granting a denominational preference*, our precedents demand that we treat the law as suspect and that we apply strict scrutiny in adjudging its constitu-

tionality." *Larson,* 456 U.S. at 246, 102 S.Ct. 1673 (emphasis added). The key point here is that the Court has instructed that there must be some initial showing that the challenged law or policy grants a denominational preference. *Id.* In *Larson,* the Court considered a section of Minnesota's Charitable Solicitations Act that provided that only those religious organizations receiving more than 50 percent of their funds from nonmembers were subject to the Act's registration and reporting requirements. *Id.* at 230, 102 S.Ct. 1673. In other words, because Minnesota's law explicitly distinguished between religious faiths, the Court held that strict scrutiny applied. *Id.* at 230, 246, 102 S.Ct. 1673.

■ Applying this precedent to the case at bar, the court notes that by merely showing, for example, that the Navy displayed faith group identifiers to chaplain promotion board members, the plaintiffs have not met their initial burden to persuade the court to apply strict scrutiny. *See id.* at 246, 102 S.Ct. 1673. Without any additional evidence, the display of the AQD codes amounts to merely a neutral practice that is of general applicability. Consequently, since the Navy's policy of displaying AQD codes *in and of itself* does not grant a preference to any religion, the court would not yet apply strict scrutiny. *See id.*

The next logical question, then, centers on what threshold the plaintiffs have to meet to show that a policy amounts to a denominational preference if the law or policy does not *explicitly* discriminate on the basis of religion. The Supreme Court addressed this issue in *County of Allegheny v. Am. Civil Liberties Union.,* 492 U.S. 573, 608–09, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989). The Court rejected another Justice's proposal that the plaintiffs in an Establishment Clause case should have to shoulder "a burden of 'unmistakable' clari-

ty" to demonstrate "government favoritism for specific sects in order to hold the favoritism in violation of the Establishment Clause." *Id.* at 608, 109 S.Ct. 3086 (disagreeing with Justice Kennedy's partial concurrence and partial dissent). Criticizing this more stringent proposal, the Court held:

> Our cases, however, impose no such burden on demonstrating that the government has favored a particular sect or creed. On the contrary, *we have expressly required 'strict scrutiny' of practices suggesting 'a denominational preference,'* in keeping with " 'the unwavering vigilance that the Constitution requires' " against any violation of the Establishment Clause.

*Id.* (quotations omitted).

The importance of this discussion for the case at bar is that while the defendants are correct that the plaintiffs here bear the initial burden to show that the Navy's policies amount to denominational preferences in favor of liturgical Christians, the defendants are somewhat mistaken when they repeatedly state that the plaintiffs have the "burden to prove the threshold inquiry: [that] the Chaplain Corps instituted policies . . . that actually discriminate against non-liturgicals" before the court can apply strict scrutiny. *E.g.,* Defs.' Mot. at 60. The plaintiffs' burden is not that onerous. Rather, under Supreme Court precedent, the plaintiffs in this case bear the initial burden to show that the challenged Navy policies "suggest[ ] 'a denominational preference. . . .' " *County of Allegheny,* 492 U.S. at 608–09, 109 S.Ct. 3086. Accordingly, if the plaintiffs can demonstrate after discovery that some or all of the Navy's policies and practices suggest a denominational preference, then the court will apply strict scrutiny to those policies

and practices for which the plaintiffs have met this initial burden.[9]

## C. Because There Are Genuine Issues of Material Fact in Dispute, the Court Denies Without Prejudice Both Parties' Cross-motions for Partial Summary Judgment

Because of the numerous disputed material facts in this case, the court denies without prejudice both parties' cross-motions for partial summary judgment. As noted previously, the parties in this case have yet to conduct discovery. A thorough discovery period will greatly assist the court in evaluating the merits of the parties' claims. Thus, when discovery has concluded, the court will allow the parties to refile their cross-motions for summary judgment.

■ The following are only some examples of the disputed material facts that would preclude a grant of summary judgment to either side. Fed.R.Civ.P. 56(c). First, the plaintiffs present evidence that in 2001, for example, liturgical Christians comprised 7.46 percent of all Navy service members but that liturgical Christians made up 35.22 percent of the Chaplain Corps. Pls.' Mot. at 5–6 (citing Pls.' Exs. 5, 6). The defendants take serious exception to the plaintiffs' use of these statistics, insisting that the appropriate demographic to rely on is the pool of potential Navy accessions into the Chaplain Corps (i.e., the pool of people who obtain an ecclesiastical endorsement) rather than the religious population of the Navy as a whole. Defs.' Mot. at 34–35; Defs.' Reply at 9. Second, while the plaintiffs maintain that the Navy has employed a thirds policy in accessions, the defendants vehemently deny this suggestion. Pls.' Mot. at 25–27;

Defs.' Mot. at 44; Defs.' Reply at 1–2. Third, the defendants' exhibit 10 lists the plaintiffs' alleged errors in accessions data for fiscal years 1990 through 2001. Defs.' Mot. at 32 (citing Defs.' Exs. 10–11). According to the defendants' data for these 12 years, the plaintiffs overstate the number of Roman Catholic accessions by 94, liturgical Christian accessions by 50, Special Worship accessions by 21, but understate the number of non-liturgical Christian accessions by 80. *Id.* The plaintiffs object to the defendants' characterization that the plaintiffs erred in listing the number of accessions. Pls.' Mot. at 41.

Fourth, the defendants include a declaration from, among others, Captain Alston Shephard Kirk, who served as Director of Plans, Policy, Programming, and Management in the office of the Chief of Chaplains from May 1988 to August 1991. Defs.' Ex. 6 at 1. Captain Kirk admitted that while the Navy's accessions plan did indicate faith group cluster breakdowns, the number was strictly meant to serve as a guide to bring a diversity of faith groups into the Chaplain Corps, rather than as a quota. *Id.* at 2–4. The plaintiffs, however, ascribe a more nefarious intent to the policy of tracking accessions, contending that this practice helped the Navy maintain its thirds policy. Pls.' Reply at 11–12. Fifth, the defendants argue that because Navy officials have directed that all chaplain promotion boards now contain five line officers and two chaplains, "[t]his new promotion board composition eliminates any concern that chaplain promotions could be unduly influenced by a majority of chaplains from any given faith." Defs.' Mot. at 37–38; Defs.' Ex. 18 at 3. The plaintiffs disagree. Pls.' Reply at 23–24. Sixth, while the defendants admit that they used

---

9. The court defers addressing the parties' dispute about how much of this showing can be comprised of statistical evidence until after discovery and the anticipated renewed motions for summary judgment.

the AQD codes up until April 2000, the parties dispute whether the Navy used these faith group identifier codes to unlawfully discriminate against non-liturgical Christian chaplains in promotions. Defs.' Mot. at 2, 36–40; Pls.' Mot. at 39–45. Lastly, the panoply of "disputed" facts listed by the defendants in their "Rebuttal of Plaintiffs' Statement of Undisputed Facts" serves as a vivid example that there are still many points of disagreement. Defs.' Mot. at 17–23.

Because there are many genuine issues of material fact in dispute, the court denies without prejudice the parties' cross-motions for summary judgment. FED. R.CIV.P. 56(c). At this juncture, neither side has carried its burden to prevail on summary judgment. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Discovery will provide both parties with a valuable opportunity to strengthen, withdraw, or reevaluate their various claims.[10] Accordingly, the court will not address the parties' substantive arguments now (such as whether a proportional representation scheme is the best system for the Chaplain Corps) but will return to these issues after discovery has occurred, at which time the parties will have the opportunity to refile cross-motions for summary judgment.[11]

## IV. CONCLUSION

For all these reasons, the court denies without prejudice both the plaintiffs' and the defendants' cross-motions for partial summary judgment. The court also denies without prejudice the plaintiffs' Rule 56 motion to strike declarations. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of August, 2002.

## *ORDER*

### DENYING WITHOUT PREJUDICE THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT;

### DENYING WITHOUT PREJUDICE THE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issue this _____ day of August, 2002, it is

10. For example, the defendants' own evidence shows that from 1996 to 2001, liturgical Christian accessions into the Corps were 44.1 percent of total accessions, 61.3 percent, 34.6 percent, 47.2 percent, 46.0 percent, and 20.0 percent respectively. Defs.' Ex. 10 at 2. These facts themselves raise several of questions: Does the Navy dispute the plaintiffs' figures that in 2000 and 2001, liturgical Christians made up 8.03 and 7.46 percent of all Navy service members but 35.25 and 35.22 percent of the Corps respectively? What was the religious makeup of all Navy service members from 1996 to 2001 when liturgical Christians accounted for an average of 42.20 percent of all Corps accessions for this six-year period? Since the defendants argue strongly that the appropriate pool for a comparison is not all Navy service members, but the pool of people who received an ecclesiastical endorsement, what were the religious demographics for this pool of people? The answers to some of these questions will not only serve the parties well but will also help the court resolve the renewed cross-motions for summary judgment.

11. One final point merits attention. On July 17, 2002, the plaintiffs filed a motion to strike three declarations pursuant to Federal Rule of Civil Procedure 56(g) because the defendants allegedly submitted them in bad faith for the purpose of prolonging the litigation. Pls.' Mot. to Strike. Because these declarations in no way affect the court's decision at this time to deny without prejudice the cross-motion motions for summary judgment, the court denies without prejudice the plaintiffs' motion to strike the declarations and allows the plaintiffs to refile this motion, if they so choose, at the end of discovery.

ORDERED that the plaintiffs' motion for partial summary judgment is **DENIED without prejudice;** and it is

**FURTHER ORDERED** that the defendants' motion for partial summary judgment is **DENIED without prejudice;** and it is

ORDERED that the plaintiffs' Rule 56 motion to strike declarations is **DENIED without prejudice.**

**SO ORDERED.**