Robert H. ADAIR, et al., Plaintiffs,

v.

Hansford T. JOHNSON,[1] Acting Secretary of the Navy, et al., Defendants.

Civil Action No. 00–0566 (RMU). Document Nos. 52, 54, 75.

United States District Court, District of Columbia.

July 15, 2003.

---

1. When a public officer is a party to an action in his official capacity and during its pendency ceases to hold office, the officer's successor is automatically substituted as a party. FED R. CIV. P. 25(d)(1). Accordingly, Hansford T. Johnson substitutes as the proper defendant. *Id.*

**184**

Arthur A. Schulcz, Sr., Vienna, VA, for plaintiffs.

Michael Q. Hyde, Washington, DC, for defendants.

### MEMORANDUM OPINION

URBINA, District Judge.

#### GRANTING THE PLAINTIFFS' MOTION TO AMEND THE FIRST AMENDED COMPLAINT

## I. INTRODUCTION

This class action comes before the court on the plaintiffs' motion to amend their first amended complaint. The plaintiffs, current and former Navy chaplains, bring this suit alleging that the Navy's policies and practices favor one religious denomination over another in violation of the First Amendment's Establishment and Free Exercise Clauses, as well as the Fifth Amendment's Equal Protection Clause. Specifically, the plaintiffs charge that the hiring, retention and promotion policies of the Navy Chaplain Corps demonstrate an unconstitutional endorsement of liturgical Christian sects over non-liturgical Christian sects.[2] Citing new evidence, the plaintiffs now move to amend their complaint to allege that the Navy's discrimination against its non-liturgical Christian chaplains began in 1977 rather than in the mid–1980s as previously alleged. Because the amendment is not futile, unduly delayed, or unduly prejudicial to defendants, the court grants the plaintiffs' motion to amend.

## II. BACKGROUND

**2.** For an explanation of the differences between liturgical and non-liturgical Christian sects, see the court's January 10, 2002 Memorandum Opinion. *Adair v. England,* 183 F.Supp.2d. 31 (D.D.C.2002).

## A. Factual Background[3]

In this case, the plaintiffs are current and former non-liturgical Christian chaplains in the Department of the Navy ("the Navy").[4] The defendants are the Secretary of the Navy, other Navy officials and the Navy. According to the plaintiffs, in the late 1960s and 1970s, America's religious demographics began a substantial shift away from liturgical Protestant denominations toward the non-liturgical Christian churches, which the plaintiffs represent. Am. Compl. at 29. Until the mid to late 1980s, the Navy used a rough proportional-representation plan to determine how many chaplains it would hire from various religious denominations. *Id.* at 29. Under this system, the Navy allegedly allocated chaplains among the various faith groups based on objective criteria, such as the relative percentage represented by a religion in the total American population. *Id.*

The plaintiffs allege that starting in the late 1980s and continuing to the present, however, the Navy switched to a subjective policy, referred to as the "thirds policy," under which the Navy allegedly reserves one-third of the Navy's slots in the Chaplain Corps for liturgical Christians, one-third for Catholics, and one-third for members of every other religion. *Id.* at 29–30. Non-liturgical Christians are included in this last, catchall category. *Id.* at 30.

### B. Procedural History

The plaintiffs filed their class-action complaint on March 17, 2000. Subsequently, on September 5, 2000, the plaintiffs amended their complaint as of right.[5] On September

22, 2000, the defendants moved to dismiss the amended complaint. On January 10, 2002, the court issued a comprehensive memorandum opinion granting in part and denying in part the defendants' motion to dismiss.[6] *Adair v. England*, 183 F.Supp.2d. 31 (D.D.C.2002). The court concluded, *inter alia*, that the statute of limitations did not bar the plaintiffs' claims for purposes of the motion to dismiss because the plaintiffs alleged that the defendants had fraudulently concealed the facts necessary to their causes of action. *Id.* at 54–55.

Subsequently, on February 7, 2002, the court held a status hearing at which it issued an order setting a schedule for further submissions, including the plaintiffs' motion for class certification. Order dated Feb. 7, 2002. On March 26, 2002, pursuant to the court's order, the plaintiffs filed their motion for class certification. On August 19, 2002, the court granted the plaintiffs' motion for class certification. *Adair v. England*, 209 F.R.D. 5 (D.D.C.2002).

On October 18, 2002, the plaintiffs moved to amend their first amended complaint to reflect purported new evidence about the true extent and duration of the Navy's alleged discrimination against non-liturgical Christian chaplains. Pls.' Mot. to Am. 1st Am. Compl. ("Pls.' Mot.") at 1. The court now addresses the plaintiffs' motion.

### III. ANALYSIS

#### A. Legal Standard for a Motion to Amend the Complaint

▮ Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading

---

3. A more complete factual background section can be found in the court's January 10, 2002 Memorandum Opinion. *See Adair*, 183 F.Supp.2d. at 35–45.

4. In January 2001, the court's Calendar Committee transferred this case and the related case of *Chaplaincy of Full Gospel Churches v. England*, Civil Action No. 99–2945, from Judge June L. Green to this member of the court. Prior to the transfer, and pursuant to the parties' joint recommendation, Judge Green consolidated the two cases for pretrial purposes. Order dated Sept. 26, 2000.

5. Prior to the filing of the plaintiffs' first amended complaint, the parties filed numerous motions, including a motion to dismiss, two motions for partial summary judgment, and a motion to

hold in abeyance (all of which the court disposed of in its Order dated September 28, 2001). Because none of these motions is considered a "responsive pleading" for purposes of Federal Rule of Civil Procedure 15, the plaintiffs' amendment was of right. Fed.R.Civ.P. 15(a); *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282–83 (D.C.Cir.2000).

6. The parties filed, and the court issued rulings on, several additional motions not directly relevant to this discussion. *E.g., Adair v. England*, 193 F.Supp.2d. 196 (D.D.C.2002); *Adair v. England*, 217 F.Supp.2d 1 (D.D.C.2002); *Adair v. England*, 209 F.R.D. 1 (D.D.C.2002); *Adair v. England*, 217 F.Supp.2d. 7 (D.D.C.2002).

once as a matter of course at any time before a responsive pleading is served. FED. R.CIV.P. 15(a). Once a responsive pleading is filed, however, a party may amend its complaint only by leave of the court or by written consent of the adverse party. *Id.; Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The grant or denial of leave is committed to the discretion of the district court. *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996). The court must heed Rule 15's mandate that leave is to be "freely given when justice so requires." FED.R.CIV.P. 15(a); *Foman,* 371 U.S. at 182, 83 S.Ct. 227; *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.,* 148 F.3d 1080, 1083 (D.C.Cir.1998). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman,* 371 U.S. at 182, 83 S.Ct. 227. Denial of leave to amend therefore constitutes an abuse of discretion unless the court gives sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments. *Foman,* 371 U.S. at 182, 83 S.Ct. 227; *Caribbean Broad. Sys.,* 148 F.3d at 1083.

■ An amended complaint is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss. *Robinson v. Detroit News, Inc.,* 211 F.Supp.2d 101, 114 (D.D.C.2002) (quoting 3 MOORE'S FED. PRAC. § 15.15[3] ); *Willoughby v. Potomac Elec. Power Co.,* 100 F.3d 999, 1003 (D.C.Cir.1996) (affirming the district court's denial of leave to amend given the "little chance" that plaintiff would succeed on his claim); *James Madison Ltd. v. Ludwig,* 82 F.3d 1085, 1099 (D.C.Cir.1996).

■ With regard to undue delay, the text of Rule 15 does not prescribe a time limit on motions for leave to amend. FED. R.CIV.P. 15(a); *Caribbean Broad. Sys.,* 148 F.3d at 1084. Accordingly, a court should not deny leave to amend based solely on time elapsed between the filing of the complaint and the request for leave to amend. *Atchinson v. District of Columbia,* 73 F.3d 418, 426 (D.C.Cir.1996) (citing *Hayes v. New Eng. Millwork Distribs., Inc.,* 602 F.2d 15, 19 (1st Cir.1979)). Nor does the prolonged nature of a case affect whether the plaintiff may amend his complaint. *Caribbean Broad. Sys.,* 148 F.3d at 1084 (concluding that the length of litigation is relevant only insofar as it suggests bad faith or prejudice). Rather, the court should take into account the actions of other parties and the possibility of resulting prejudice to the opposing party. *Id.; Atchinson,* 73 F.3d at 426.

To demonstrate such prejudice, the opposing party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Dooley v. United Techs. Corp.,* 152 F.R.D. 419, 425 (D.D.C.1993) (quoting *Foremost–McKesson Inc. v. Islamic Rep. of Iran,* 759 F.Supp. 855, 858 (D.D.C.1991)). For example, prejudice may exist when allowing an amendment would necessitate reopening discovery at a relatively late stage in the proceedings. *E.g., Societe Liz, S.A. v. Charles of the Ritz Group, Ltd.,* 118 F.R.D. 2, 4 (D.D.C.1987) (finding prejudice when the motion to amend was filed just prior to the close of discovery, with trial fast approaching); *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.,* 1987 WL 9232, at *2 (D.D.C. March 25, 1987) (finding prejudice when the proposed amendment would prolong discovery after the previously announced deadline). In addition, an amendment may cause prejudice if it bears only a tangential relationship to the complaint or changes the character of the litigation. *Nat'l Treasury Employees Union v. Helfer,* 53 F.3d 1289, 1295 (D.C.Cir.1995); *Deasy v. Hill,* 833 F.2d 38, 42 (4th Cir.1987). Finally, prejudice may exist "when the effect of the amendment is to impair the opposing party's ability to present evidence." *Prince v. Suffolk County Dep't of Health Servs.,* 1995 WL 144782, at *6 (S.D.N.Y. Apr.3, 1995).

## B. The Court Grants the Plaintiffs' Motion for Leave to Amend

In support of their motion to amend, the plaintiffs state that they recently received

new evidence that the Navy's discrimination began not in 1988, but in 1977. Pls.' Mot. at 5. The plaintiffs note that their amended complaint currently identifies the late 1980s as the point at which the Navy announced the thirds policy. *Id.* at 4–5. According to the plaintiffs, the new evidence they received—namely, an affidavit from a 1985 discrimination suit against the Navy, and documents produced by the Chiefs of the Chaplain Corps from 1979 to 1985—indicates that liturgical chaplains dominated the composition of the promotion boards before the mid–1980's. *Id.* at 5, Exs. 4–8, 10. The plaintiffs suggest that this evidence bolsters their view that the Navy's discriminatory practices began in 1977, when then-Chief J.J. O'Connor allegedly initiated a "stacking policy" of placing two Catholic chaplains on every chaplain promotion board. *Id.* at 5–6. Accordingly, the plaintiffs would like to amend their complaint to conform their allegations to the new evidence, and to redefine the period of discrimination (and therefore the size of the class to be certified) as beginning in 1977. *Id.* at 1.

The defendants oppose the plaintiffs' motion to amend on grounds of futility, undue delay and undue prejudice. Defs.' Opp'n to Pls.' Mot. ("Defs.' Opp'n") at 1. First, the defendants assert that the plaintiffs' proposed amendment would be futile because it is conclusively barred by the applicable statute of limitations, which allows claims against the United States only if brought within six years of the accrual of the cause of action. *Id.* at 4–5 (citing 28 U.S.C. § 2401(a)). Nor, according to the defendants, may the doctrine of equitable tolling save the amendment.[7] *Id.* at 7–10. Second, the defendants claim that the plaintiffs' failure to bring these allegations at or near the beginning of the action, despite every opportunity to do so, constitutes undue delay. *Id.* at 11–12. The defendants contend that adding allegations relating to the 1977–1986 period at this point

in the litigation would cause them undue prejudice given the problems inherent in gathering evidence from so long ago. *Id.* at 12–13.

## 1. The Plaintiffs' Proposed Amendment Is Not Futile

In asserting that the plaintiff's proposed amendment is futile, the defendants cite to the six-year statute of limitations for claims against the United States, as set forth in section 2401(a) of title 28, United States Code. Defs.' Opp'n at 4–5; 28 U.S.C. § 2401(a). Because the stacking policy ended in 1986, the defendants assert that the plaintiffs should have brought all claims stemming from the stacking policy before 1992. Defs.' Opp'n at 5. In addition, the defendants argue at length that equitable tolling is not relevant here, as Congress never intended equitable tolling to apply to section 2401(a) and that even if Congress did, the court should not invoke equitable tolling here because the plaintiffs should have known of their cause of action long before this point. *Id.* at 7–10.

In its January 2002 opinion, the court addressed this very issue. *Adair*, 183 F.Supp.2d. at 54–55. Specifically, the court declined to dismiss the plaintiffs' claims as time-barred by section 2401(a), noting that the plaintiffs had pled that the Navy fraudulently concealed crucial information, thereby preventing the plaintiffs from alleging an essential element of their claim. *Id.* at 54. The court noted that according to the D.C. Circuit, such fraudulent concealment tolls the statute of limitations until the time that a reasonably diligent plaintiff could have discovered the elements of his claim. *Id.* (citing *Hohri v. United States*, 782 F.2d 227, 246 (D.C.Cir.1986), *vacated and remanded on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987)).

---

7. Equitable tolling is a doctrine whereby a court, in the interests of justice, can suspend the normal running of the statute of limitations to ensure that the plaintiff is not, "by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit." *Chung v. Dep't of Justice*, 333 F.3d 273, 277–79 (D.C.Cir. 2003) (internal quotation marks omitted). A

plaintiff may invoke equitable tolling when a defendant is found to have committed fraudulent concealment, hiding from the plaintiff the basis of a cause of action. *Hohri v. United States*, 782 F.2d 227, 246 (D.C.Cir.1986), *vacated and remanded on other grounds*, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987).

The defendants argue that in light of the Supreme Court's decision in *United States v. Brockamp, Hohri* is no longer good law for the proposition that equitable tolling applies to section 2401(a) in cases alleging fraudulent concealment. Def.'s Opp'n at 7–8 (citing *United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997)). In *Brockamp*, the Court concluded that equitable tolling did not apply to the statute of limitations established for tax refund claims. *Brockamp*, 519 U.S. at 354, 117 S.Ct. 849. As its rationale, the Court noted that the tax-refund statute set forth its time limitations in an "unusually emphatic" and "highly technical manner [that] cannot easily be read as containing implicit exceptions." *Id.* at 350, 117 S.Ct. 849. The Court also noted that application of equitable tolling for the tax-refund statute of limitations would impose "serious administrative problems" on the Internal Revenue Service, which processed 90 million tax refunds a year. *Id.* at 352–53, 117 S.Ct. 849.

■ The court is not persuaded, however, that *Brockamp* calls *Hohri* into question, as section 2401(a) is distinguishable from the tax-refund statute of limitations in *Brockamp*. In contrast to the tax-refund statute, section 2401(a) does not set forth its time limitations in an unusually emphatic or highly technical manner, and reading equitable tolling into section 2401(a) would not present the administrative havoc with which the Supreme Court was concerned in *Brockamp*. *Clymore v. United States*, 217 F.3d 370, 374 (5th Cir.2000) (holding in a post-*Brockamp* case that section 2401(a) is a "garden variety" limitations statute to which equitable tolling applies); *see also Chung v. Dep't of Justice*, 333 F.3d 273, 276–77 (D.C.Cir.2003) (finding that equitable tolling applied to the Privacy Act given the absence of unusually emphatic or highly technical language in its limitations statute). Accordingly, following its earlier analysis, the court concludes that because fraudulent concealment equitably tolls section 2401(a), section 2401(a) does not bar the plaintiffs' claims and the proposed amendment is not futile.[8] *James Madison,*

82 F.3d at 1099; *Clymore*, 217 F.3d at 374; *Adair*, 183 F.Supp.2d at 55.

**2. The Defendants Have Not Demonstrated That the Plaintiffs' Proposed Amendment Is Unduly Delayed or Would Cause Prejudice**

■ The defendants contend that the plaintiffs' proposed amendment is unduly delayed and would cause them undue prejudice. Defs.' Opp'n at 11. They note that the plaintiffs filed and amended their complaint in 2000, and assert that a three-year delay in amending the complaint alone constitutes sufficient grounds for denial. *Id.* The defendants also assert prejudice from the loss of certain documentary evidence resulting from the passage of time since 1977. *Id.* at 12–13. Specifically, they note that the death of former Chief O'Connor in May 2000, two months after the plaintiffs filed their original complaint, deprives the litigants of a crucial witness. *Id.* at 12. In addition, the defendants claim that evidence concerning the denominational composition of chaplain promotion boards from 1977 to 1986 is becoming progressively harder to locate given the passage of time. Defs.' Opp'n at 10 n. 4, 12.

The question before the court is whether the delay in this case would cause undue prejudice to the defendant. *Caribbean Broad. Sys.*, 148 F.3d at 1084; *Atchinson*, 73 F.3d at 426. The court concludes that it would not. First, notwithstanding the extensive briefing by the parties over the past three years, this litigation is still at a relatively early stage. *Cf. Societe Liz*, 118 F.R.D. at 4. In contrast to the procedural posture of the cases cited by the defendants, in this case the parties have yet to launch discovery pursuant to a court schedule. *Williamsburg Wax Museum v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C.Cir.1987) (denying leave to amend the complaint in a six-year-old case after the court had granted summary judgment for the appellees); *Mittleman v. United States*, 997 F.Supp. 1, 3 (D.D.C.1998) (denying leave to amend the

---

8. As noted in its previous opinion, the court will reconsider the defendants' argument regarding the statute of limitations if the defendants raise it

in a motion for summary judgment after the close of discovery. *Adair v. England*, 183 F.Supp.2d. 31, 55 (D.D.C.2002).

complaint in a 12–year–old case after the court had granted summary judgment on virtually all claims for the defendants); *see also Hoffman v. United States,* 266 F.Supp.2d 27, 33, 2003 WL 21348333, at *4 (D.D.C. May 30, 2003) (denying leave to amend the complaint in a 20–year–old case after multiple district and appellate proceedings); *Societe Liz,* 118 F.R.D. at 4 (denying leave to amend in a case that had been pending for at least two years given that discovery had closed and trial dates had been set).

Second, it is not clear from the record that the amendment would impair the defendants' ability to present evidence. *Prince,* 1995 WL 144782, at *6. Redefining the relevant time period from the late 1980s to 1977 will increase the evidentiary demands placed on the defendants (and the plaintiffs), but that increase does not necessarily rise to the level of undue prejudice. *Dooley,* 152 F.R.D. at 425. From the record it appears that if the plaintiffs had included this time period at the time they filed their original complaint, the same evidence that the defendants contend is not available today likewise would not have been available then. *Id.* First, because the Navy consolidated its old Chaplain Corps records prior to the filing of the plaintiffs' suit, any board-membership or other records that are missing as a result would have been missing at the start of this litigation. Pls.' Reply at 15; Defs.' Opp'n at 10 n. 4. Second, although former Chief O'Connor—a witness potentially as important to the plaintiffs as to the defendants—passed away three years ago, his death occurred just two months after the plaintiffs filed their complaint, making it unlikely that he could have been deposed before his death.[9] *Accord Havoco of Am., Ltd. v. Hilco, Inc.,* 750 F.Supp. 946, 959 (N.D.Ill.1990) (noting that the death of certain witnesses did not constitute prejudice sufficient to bar the amendment of the defendants' answer because the witnesses would

not have been available at the time of the original answer); *McNeal v. Maritank Phila., Inc.,* 1999 WL 80268, at *10 (E.D.Pa. Feb.3, 1999) (finding that the death of an important witness was not prejudicial to the ability of a proposed new defendant to defend itself because the witness was equally important to the existing defendants). As a result, the court concludes that the defendants have not shown that the proposed amendment is unduly delayed or would cause them undue prejudice.[10] *Caribbean Broad. Sys.,* 148 F.3d at 1084; *Atchinson,* 73 F.3d at 426; *Dooley,* 152 F.R.D. at 425.

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion to amend their complaint. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 15th day of July, 2003.

**9.** It also is not clear that former Chief O'Connor would have been the "only person from whom the [defendant] could have obtained any evidence regarding the amended claim." *UNR Indus., Inc. v. Continental Ins. Co.,* 623 F.Supp. 1319, 1325 (D.Ill.1985).

**10.** The plaintiffs' proposed amendment also would promote judicial economy by avoiding additional lawsuits based on the same or similar claims. *Childers v. Mineta,* 205 F.R.D. 29, 33 (D.D.C.2001) (concluding that granting leave to amend and thereby combining two civil actions would promote judicial economy); 3 MOORE'S FED. PRAC. § 15.15[1].