CHAPLAINCY OF FULL GOSPEL CHURCHES et al., Plaintiffs,

v.

Hansford T. JOHNSON, Acting Secretary of the Navy, et al., Defendants.

Robert H. Adair et al., Plaintiffs,

v.

Hansford T. Johnson, Acting Secretary of the Navy, et al., Defendants.

Civil Action Nos. 99–2945 (RMU), 00–0566 (RMU).

United States District Court, District of Columbia.

Sept. 2, 2003.

directs the parties to submit a revised joint status report.

Arthur A. Schulcz, Sr., Vienna, VA, for plaintiffs.

Michael Q. Hyde, U.S. Department of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION

URBINA, District Judge.

GRANTING THE PLAINTIFFS' MOTION TO COMPEL; DENYING OTHER PENDING DISCOVERY MOTIONS; AND DIRECTING THE PARTIES TO SUBMIT A REVISED JOINT STATUS REPORT

## I. INTRODUCTION

This matter comes before the court on the plaintiffs' motion to compel the testimony of Navy chaplain selection-board personnel. The plaintiffs, current and former Navy chaplains, bring this suit against the Secretary, other Navy officials, and the Navy alleging that the Navy's policies and practices—including the selection-board process—favor liturgical Christians over non-liturgical Christians in violation of the First and Fifth Amendments to the Constitution. The plaintiffs now wish to depose former members of chaplain selection boards. The defendants contend that the requested testimony is not relevant and assert the deliberative-process privilege as well as an absolute or qualified statutory privilege. Because the requested testimony is relevant, the deliberative-process privilege does not apply, and no statutory privilege exists, the court grants the plaintiffs' motion. The court also denies other pending discovery motions and

## II. BACKGROUND [1]

The plaintiffs in this case allege that the Navy has established, promoted, and maintained religious quotas and other discriminatory practices in the Navy Chaplain Corps in violation of the First and Fifth Amendments. Second Am. Compl. at 2. According to the plaintiffs, until the 1980s, the Navy hired chaplains from various faith groups based on objective criteria, such as the relative percentage a religion represented in the total American population. Id. at 23–24. In response to a shift in America's religious demographics away from liturgical Protestant denominations and toward non-liturgical Christian faith groups, however, the Navy allegedly abandoned its objective criteria and adopted a subjective "thirds policy." Id. at 24. Under the thirds policy, the Navy allegedly reserved one-third of its Chaplain Corps slots for Catholics, one-third for liturgical Protestants, and one-third for members of all other religions (including non-liturgical Christians). Id.

According to the plaintiffs, the Navy applied the thirds policy not only to accessions,[2] but to promotions and retentions. Id. at 25. To identify officers for promotion and early retirement, the Navy uses selection boards that evaluate a chaplain's capacity and potential for further service. Id. at 28, 30 (citing 10 U.S.C. § 612 et seq.). The plaintiffs allege that to maintain liturgical control of the Chaplain Corps, the Navy uses the promotion and early retirement selection boards to diminish non-liturgical chaplains' opportunity for promotion and to "thin down" the number of non-liturgical chaplains at the

1. The plaintiffs in both this action and the related case of *Adair v. Johnson* allege that the Navy has established and maintained an unconstitutional religious quota system for promotion, assignments, and retention of Navy chaplains, in violation of the First and Fifth Amendments. *Adair* Second Am. Compl.; *Chaplaincy* Second Am. Compl. Pursuant to the parties' joint recommendation, the court consolidated the two cases for pretrial purposes. Order dated Sept. 26, 2000. Because the plaintiffs filed their motion to compel in the *Chaplaincy* case, however, the court draws the factual history from the *Chaplaincy*

complaint. For a more detailed discussion of the factual backgrounds of both cases, see *Adair v. England*, 183 F.Supp.2d 31 (D.D.C.2002) and *Chaplaincy of Full Gospel Churches v. Danzig*, No. 99–2945, slip op. at 2–7 (Aug. 17, 2000).

2. The term "accessions" refers to individuals the Chaplain Corps brings into the Navy, either active duty or reserve, as commissioned officers during the current fiscal year. *Adair v. England* 217 F.Supp.2d 7, 9 n. 5 (D.D.C.2002) (quoting the defendants' submission).

higher ranks by forcing them out of service. *Id.* at 24, 28, 32–33. In support of their allegations, the plaintiffs set forth various statistics and anecdotal evidence. *E.g., id.* at 4–9, 14–17, 19–20, Exs. 2–4, 6. The plaintiffs also point to a 1995 report ("the Ellis Report") noting a "clear" and "disconcerting" institutional bias against nonliturgical chaplains in key Navy positions and a 1997 report ("the Stafford Report") indicating that one promotion board "may have systematically applied a denominational quota system, perhaps to ensure balanced denominational representation across the Chaplain Corps." *Id.* at 26–27, 32, Exs. 5, 8.

The plaintiffs filed their complaint in November 1999. Two years later, in January 2001, the court's Calendar Committee transferred this case and the related case of *Adair v. Johnson,* Civil Action No. 00–0566, to this member of the court. On January 10, 2002, the court issued a comprehensive memorandum opinion granting in part and denying in part the defendants' motion to dismiss both consolidated cases. *Adair v. England,* 183 F.Supp.2d 31 (D.D.C.2002). The court concluded, *inter alia,* that the plaintiffs had successfully stated a claim that the defendants' policies and practices violated the Constitution.[3] *Id.*

On October 29, 2002, the plaintiffs filed their motion to compel the testimony of Navy chaplain selection-board personnel.[4] They contend that the testimony of selection-board personnel is material to their claims, but that the Navy has refused to allow such personnel to testify on the grounds that the proceedings of a selection board "may not be disclosed to any person not a member of the board." Pls.' Mot. to Compel ("Pls.' Mot.") at 1 (citing 10 U.S.C. § 618(f)). On May 1, 2003, the plaintiffs filed a motion asking the court to find that the defendants have waived their opposition to the plaintiffs' motion to compel, or, in the alternative, to allow them to file their waiver motion as a supplemental pleading.[5] Pls.' Waiver Mot. The plaintiffs also filed a motion to alter the limits for the number of depositions and interrogatories, motions to refer the motion to alter and future discovery motions to a magistrate judge, and a motion to vacate existing discovery dates. The court turns first to the plaintiffs' motion to compel, and then to the remaining discovery motions.

### III. ANALYSIS

#### A. Legal Standard for a Motion to Compel [6]

█ Under Federal Rule of Civil Procedure 37(a), a party may move the court in

---

**3.** Since then, the court has issued rulings on several additional motions. *E.g., Chaplaincy of Full Gospel Churches v. Johnson,* 276 F.Supp.2d 82, 2003 WL 21940397 (D.D.C. Aug.14, 2003); *Chaplaincy of Full Gospel Churches v. Johnson,* 276 F.Supp.2d 79, 2003 WL 21783173 (D.D.C. Aug.4, 2003); *Adair v. Johnson,* 216 F.R.D. 183 (D.D.C.2003); *Adair v. England,* 217 F.Supp.2d 7 (D.D.C.2002); *Adair v. England,* 209 F.R.D. 5 (D.D.C.2002); *Adair v. England,* 209 F.R.D. 1 (D.D.C.2002); *Adair v. England,* 217 F.Supp.2d 1 (D.D.C.2002); *Adair v. England,* 193 F.Supp.2d 196 (D.D.C.2002).

**4.** Although the title of the plaintiffs' motion refers only to chaplain promotion boards, the text of the motion refers to chaplain selection boards generally. Pls.' Mot. at 1 (referring to the need for the testimony of those associated with "chaplain selection boards"), 2 (requesting the release of those associated with "chaplain selection boards... includ[ing] promotion, selective early retirement ... and other statutory boards"). Like the defendants, the court therefore assumes that the plaintiffs seek discovery of all chaplain selection boards. Defs.' Opp'n at 2 n. 3.

**5.** The plaintiffs style their motion as a "Notice of Defendant's [sic] Waiver of Opposition to Plaintiffs' Motion for an Order Compelling the Secretary of the Navy to Release Board Personnel from Their Oath of Secrecy or in the Alternative a Motion to File a Supplemental Pleading." Pls.' Waiver Mot. at 1.

**6.** In this case, although the plaintiffs do not style their motion as a motion to compel, everything about their motion is characteristic of a Rule 37 motion to compel. FED.R.CIV.P. 37(a). Specifically, the plaintiffs seek to compel certain disclosures by the defendants. Pls.' Mot. at 1; *accord* FED.R.CIV.P. 37(a)(2). In addition, following Rule 37 procedures, the plaintiffs "have requested on several occasions that the Secretary release board members from their oath [and the] Navy has refused, necessitating this motion." Pls.' Mot. at 1–2; *accord* FED.R.CIV.P. 37(a)(2). Accordingly, the defendants view the motion as a Rule 37 motion to compel, and the court joins them in that view. *E.g.,* Defs.' Opp'n at 32 & Ex. H.

which the action is pending for an order compelling disclosure. FED.R.CIV.P. 37(a). The party must certify that the movant has conferred in good faith with the party refusing disclosure in an effort to avoid court action. *Id.* If the court grants the motion to compel, the court "shall, after affording an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees." *Id.* 37(a)(4); *see also* Standing Order ¶ 9. This award of expenses is intended to "deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists." *Cobell v. Norton ("Cobell I")*, 213 F.R.D. 16, 29 (D.D.C.2003) (quoting FED.R.CIV.P. 37(a)(4) advisory committee's note).

■ A court may not award Rule 37 expenses, however, if it finds, *inter alia*, that "the opposing party's nondisclosure, response, or objection was substantially justified." FED.R.CIV.P. 37(a)(4). An opposing party's objection qualifies as "substantially justified" if "there is a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *Cobell v. Norton ("Cobell II")*, 213 F.R.D. 48, 61 (D.D.C.2003); *see also* 8A FED. PRAC. & PROC. § 2288 (stating that an objection to a motion is substantially justified "if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule"); *accord Pub. Citizen Health Research Group v. Young*, 909 F.2d 546, 552 (D.C.Cir.1990) (stating, in the context of the Equal Access to Justice Act, that the question "is whether there was a reasonable basis in fact and law for the government's litigating position").

■ A trial court enjoys broad discretion in choosing a sanction under Rule 37. *Sturgis v. Am. Ass'n of Retired Persons*, 1993 WL 518447, at *1 (D.C.Cir.1993) (per curiam). That said, "[t]he central requirement of Rule 37 is that any sanction must be just." *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C.Cir.1996).

### B. The Parties' Arguments

The defendants advance three arguments in opposition to the plaintiffs' motion to compel. First, the defendants argue that the testimony the plaintiffs seek is not relevant in light of the statistical evidence before the court, and thus is not discoverable under Federal Rule of Civil Procedure 26(b). Defs.' Opp'n at 5–16 (citing FED.R.CIV.P. 26(b)(1)). Second, the defendants contend that even if the requested testimony is relevant, it is absolutely protected from disclosure pursuant to 10 U.S.C. § 618(f), the statute barring disclosure of selection-board deliberations. *Id.* at 16–19. Finally, the defendants state that even if section 618(f) does not act as an absolute bar to discovery, the requested testimony is protected by a qualified statutory privilege or the deliberative-process privilege because the government's interest in maintaining confidentiality of board deliberations far outweighs the plaintiffs' need for the requested testimony. *Id.* at 19–31.

The plaintiffs counter each of these arguments. Marshaling statistical evidence of their own, the plaintiffs assert that the testimony they seek is relevant under Rule 26(b). Pls.' Reply at 2–10. Moreover, according to the plaintiffs, section 618(f) does not serve as an absolute bar to disclosure for purposes of discovery. Pls.' Mot. at 8–9; Pls.' Reply at 11–13. Nor, in the plaintiffs' view, does a qualified statutory privilege apply, as the plaintiffs' need for the testimony outweighs any countervailing factors. Pls.' Mot. at 16–19. As for the deliberative-process privilege, the plaintiffs state that it cannot apply because the integrity of the deliberative process here—the Navy chaplain selection boards—is squarely at issue. Pls.' Mot. at 5–8.

### C. The Court Concludes That the Requested Testimony Is Relevant

#### 1. Relevance Under Federal Rule of Civil Procedure 26(b)(1)

■ Rule 26(b)(1) authorizes discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any par-

ty." FED.R.CIV.P. 26(b)(1). The term "relevance" is broadly construed, and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.; Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union,* 103 F.3d 1007, 1012 (D.C.Cir.1997); *see also Smith v. Schlesinger,* 513 F.2d 462, 473 n. 37 (D.C.Cir.1975) (noting that "a party may discover information which is not admissible at trial if such information will have some probable effect on the organization and presentation of the moving party's case"). Put another way, "[a] showing of relevance can be viewed as a showing of need[, as] for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of matter not relevant to the subject matter involved in the pending action." *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1341 (D.C.Cir. 1984). That said, relevancy does not encompass discovery of information with "no conceivable bearing on the case." *Id.* (citing 8 FED. PRAC. & PROC. 2d § 2008). A trial court enjoys considerable discretion over discovery matters. *Id.; United States v. Krizek,* 192 F.3d 1024, 1029 (D.C.Cir.1999).

### 2. The Testimony of Selection–Board Personnel Is Relevant Under Rule 26(b)(1)

■ The plaintiffs seek to obtain testimony from former selection-board personnel with first-hand knowledge of various board deliberations. Pls.' Mot. at 1–2 & Exs. 4–5. Both here and in the *Adair* case the plaintiffs claim that the Navy has established, promoted, and maintained religious quotas and other discriminatory practices favoring liturgical Christian chaplains over non-liturgical chaplains in violation of the First and Fifth Amendments. *See generally* Second Am. Compl.; *Adair* Second Am. Compl. Throughout this litigation, the plaintiffs repeatedly have cited the selection-board process as a prime example of the Navy's allegedly discriminatory practices. *E.g.,* Second Am. Compl. at 27–28, 30–32; *see also, e.g., Chaplaincy of Full Gospel Churches v. Johnson,* 2003 WL 21940397, at *1 (D.D.C. Aug.14, 2003); *Adair v. Johnson,* 216 F.R.D.

183, 186–87 (D.D.C.2003); *Adair v. England,* 217 F.Supp.2d 7, 9–10 (D.D.C.2002); *Adair v. England,* 209 F.R.D. 5, 10 (D.D.C.2002); *Adair v. England,* 183 F.Supp.2d 31, 42 (D.D.C.2002). It is hard to argue that the testimony of former selection-board personnel with direct knowledge of board proceedings is not "relevant" and "reasonably calculated to lead to the discovery of admissible evidence" regarding alleged Navy discrimination against non-liturgical chaplains in those very proceedings. FED.R.CIV.P. 26(b)(1); *Food Lion,* 103 F.3d at 1012; *accord Alexander v. Fed. Bureau of Investigation,* 186 F.R.D. 170, 174 (D.D.C.1999) (*"Alexander I"*) (granting the "Filegate" plaintiffs' motion to compel testimony because their proposed questions were reasonably calculated to lead to the discovery of a White House connection to the release of Linda Tripp's security information).

The defendants, however, attempt to argue the point. Specifically, the defendants contend that "anecdotal evidence" of board proceedings cannot prove the plaintiffs' allegations of religious bias, and thus that the requested testimony cannot be relevant. Defs.' Opp'n at 13–14 (listing cases holding that anecdotal evidence is insufficient to prove a pattern or practice of discrimination). But this logic would turn Rule 26 on its head by requiring the plaintiffs to prove their claim before permitting them to seek discovery. Although the defendants may believe that the plaintiffs' evidence is insufficient to support their claims, "[d]iscovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient." 8 FED. PRAC. & PROC. CIV. 2d § 2008. Accordingly, the court concludes that the plaintiffs' requested testimony is relevant within the meaning of Rule 26(b)(1). FED. R.CIV.P. 26(b)(1); *Food Lion,* 103 F.3d at 1012.

### D. The Court Concludes that the Government–Misconduct Exception Bars Application of the Deliberative–Process Privilege

#### 1. The Deliberative–Process Privilege

■ The general purpose of the deliberative-process privilege is to "prevent inju-

ry to the quality of agency decisions." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). The three policy objectives underlying the privilege are (1) to encourage creative and candid discussions within an agency and thereby improve the quality of agency policy decisions; (2) to protect against premature disclosure of proposed policies before final adoption, and (3) to protect the integrity of the decision-making process by ensuring that officials are judged by their final decision, rather than for matters considered beforehand. *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772–73 (D.C.Cir. 1978). Toward that end, the privilege protects "documents and other materials that would reveal advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C.Cir.1997) (quoting *Sears*, 421 U.S. at 150, 95 S.Ct. 1504). Accordingly, for the privilege to apply, the government must show that the material is both predecisional and deliberative. *Id.*

 Because the deliberative-process privilege is a qualified privilege, it may be overcome by a sufficient showing of need by the party seeking discovery. *Id.* Once the government has asserted the privilege, the court must balance the party's need against the harm that may result from disclosure, taking into account the relevance of the evidence, the availability of other evidence, the seriousness of the litigation and the issues involved, the role of the government in the litigation, and the possibility of future timidity by government employees. *Id.* at 737–38; *First E. Corp. v. Mainwaring*, 21 F.3d 465, 468 n. 5 (D.C.Cir.1994).

 When there is any reason to believe that government misconduct has occurred, however, our court of appeals has made clear that the deliberative-process privilege disappears altogether. *In re Sealed Case*, 121 F.3d at 746; *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422,

1424 (D.C.Cir.1998) (noting that "if the plaintiff's cause of action is directed at the government's intent ... it makes no sense to permit the government to use the privilege as a shield"); *see also Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 162–63 (D.D.C.2003) (stating that "it is inconceivable" that Congress intended the deliberative-process privilege to apply to information bearing on whether an agency engaged in discrimination); *Dominion Cogen D.C., Inc. v. District of Columbia*, 878 F.Supp. 258, 268 (D.D.C.1995) (finding that the privilege does not apply where the plaintiff's allegations "place the deliberative process itself directly in issue"). Under this government-misconduct exception, the court does not engage in the usual balancing test, but simply concludes that the privilege does not "enter the picture at all." *In re Subpoena Duces Tecum*, 145 F.3d at 1425; *see also Alexander I*, 186 F.R.D. at 177 (rejecting as "incorrect" the government's argument that the balancing test applies in the face of identifiable government misconduct). To invoke the government-misconduct exception, the party seeking discovery must provide an adequate factual basis for believing that the requested discovery would shed light upon government misconduct. *Judicial Watch of Fla. v. Dep't of Justice*, 102 F.Supp.2d 6, 15–16 (D.D.C. 2000); *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 154, 164 (D.D.C.1999) ("*Alexander II*").

**2. The Plaintiffs Have Provided an Adequate Factual Basis for Their Belief Regarding Government Misconduct**

 The defendants argue that the deliberative-process privilege protects the requested testimony because selection-board proceedings are both predecisional and deliberative. Defs.' Mot. at 20–21. Moreover, the defendants assert that the government-misconduct exception does not apply because the plaintiffs have provided no "reason to believe" that the requested testimony would shed light on alleged Navy discrimination against non-liturgical chaplains.[7] *Id.* at 22.

---

7. As an aside, the defendants take issue with the plaintiffs' characterization of government misconduct as an automatic exception to the deliberative-process privilege. Defs.' Mot. at 22 n. 9 (adopting the position of the government defendants in *Alexander I*, 186 F.R.D. at 177). The

Specifically, the defendants contend that the plaintiffs' statistics "bear out no systemic discrimination against non-liturgicals as a class." *Id.* The plaintiffs dispute the defendants' arguments, and point to evidence that they believe demonstrates the Navy's misconduct. The plaintiffs cite to the Stafford Report, along with a 1999 report by the inspector general of the Department of Defense ("DoD IG report") and a 1998 investigation by the inspector general of the Navy ("Navy IG report"), all of which the plaintiffs say raise questions about the impartiality of the chaplain selection boards. Pls.' Mot. at 6, 10–13 & Ex. 2; Pls.' Reply at 3. The plaintiffs also cite to various statistics that they believe demonstrate the application of the thirds policy to chaplain promotions. Pls.' Mot. at 13–16 & Exs. 9–10.

Without addressing the merits of the plaintiffs' claims, the court concludes that the plaintiffs have provided an adequate factual basis for their belief that the requested testimony will provide evidence of government misconduct. *Alexander II,* 186 F.R.D. at 165. The various reports and statistics cited by the plaintiffs are adequate at this stage to support a belief that the Navy engaged in discrimination against non-liturgical chaplains.[8] *Id.* (finding that the inclusion of certain misinformation in draft responses to members of Congress

about Filegate provided an adequate basis to believe that government misconduct had occurred); *cf. Judicial Watch,* 102 F.Supp.2d at 15–16 (holding that the plaintiff's bare and unsupported allegation of misconduct by the Attorney General did not provide an adequate basis to believe that discovery would shed light on government misconduct). Because the plaintiffs have adequately provided a reason to believe that Navy misconduct has occurred, the deliberative-process privilege disappears and cannot prevent discovery of the requested testimony. *In re Subpoena Duces Tecum,* 145 F.3d at 1424; *In re Sealed Case,* 121 F.3d at 746.

### E. The Court Concludes that Section 618(f) Does Not Bar Limited Discovery

#### 1. Statutory Bans on Publication [9]

 "It is well-settled in this circuit that general statutory bans on publication do not bar limited disclosure in judicial proceedings, including court-supervised discovery." *Laxalt v. McClatchy,* 809 F.2d 885, 889 (D.C.Cir.1987). Two factors underlie this conclusion. First, full access by the courts and litigants to relevant information is "an important foundation for the achievement of justice by the courts in individual lawsuits." *Freeman v. Seligson,* 405 F.2d 1326, 1348 (D.C.Cir.1968). Second, the purpose of stat-

---

defendants suggest that "the proper analysis of the deliberative process privilege would involve the court's consideration of government misconduct as a factor in balancing of the interests, but not as an automatic exception to application of the deliberative process privilege." *Id.* In light of the clear statements by our court of appeals, however, this court agrees with Judge Lamberth's conclusion that the defendants' suggestion is "simply incorrect." *Alexander I,* 186 F.R.D. at 178.

8. The court's conclusion that the plaintiffs' statistics provide an adequate basis for a belief in Navy misconduct does not pass judgment on the relative strengths of the parties' statistics. *Alexander II,* 186 F.R.D. at 164–65 (distinguishing between proving misconduct and providing a basis for a belief in misconduct). The court is acutely aware of the disagreements between the parties over the use and accuracy of statistical data regarding, *inter alia,* Navy chaplain accessions and promotions. *E.g., Adair,* 217 F.Supp.2d at 15. In fact, toward that end, the court has stressed that "a thorough discovery

period will greatly assist the court in evaluating the merits of the parties' claims." *Id.*

9. In their analysis, the parties cite to *St. Regis* and *Women in Science,* two cases that analyze statutes barring disclosure of confidential reports. Pls.' Mot. at 8 (citing *St. Regis Paper Co. v. United States,* 368 U.S. 208, 218, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961) and *Ass'n for Women in Science v. Califano,* 566 F.2d 339, 346 (D.C.Cir. 1977)); Defs.' Opp'n at 16–19 (same). In contrast to section 618(f), however, the statutes at issue in *St. Regis* and *Women in Science* focus on disclosure of confidential reports received from citizens. Defs.' Opp'n at 18; *St. Regis,* 368 U.S. at 218, 82 S.Ct. 289; *Women in Science,* 566 F.2d at 343, 346. Because the confidential-reports privilege is not at issue in this case, however, the court instead looks to authority addressing with statutes that bar the publication or disclosure of information. *E.g., Laxalt v. McClatchy,* 809 F.2d 885, 887 n. 7 (D.C.Cir.1987) (examining Privacy Act proscriptions on disclosure of records).

utory publication bans is not to prevent discovery, but rather to prevent the broadcasting of sensitive information to the general public. *Friedman*, 738 F.2d at 1343–44. Moreover, our court of appeals has declined to infer a qualified privilege from statutory publication bans, given that "where Congress has thought it necessary to protect against court use of records [it] has expressly so provided by specific language." *Id.* at 1343 (internal quotations omitted); *see also Laxalt*, 809 F.2d at 889 (stating that "we ... refuse[ ] to infer the creation of a qualified privilege from congressional silence"). Instead, Congress "must clearly and strongly indicate its intent to contradict [the] broad objective favoring disclosure in judicial proceedings." *Friedman*, 738 F.2d at 1343 (internal quotations omitted).

▮▮▮▮ Although statutory publication bans do not bar discovery, they are relevant in determining the appropriate scope and manner of discovery. *Laxalt*, 809 F.2d at 889. The interests protected by statutory publication bans "reflect a congressional judgment that certain delineated categories of documents may contain sensitive data which warrants a more considered and cautious treatment." *Id.* (quoting *Friedman*, 738 F.2d at 1344). Therefore, in exercising its supervision of discovery, a court "must accord the proper weight to the policies underlying these statutory protections, and compare them with the factors supporting discovery in a particular lawsuit." [10] *Id.* A court then may use traditional devices—such as protective orders or *in camera* inspection—to shape a discovery plan that will give effect to liberal discovery rules without threatening the interests protected by statutory publication bans. *Id.* (noting that "the courts can limit ... the persons having access to information, their freedom to discuss [that] information ... and the uses to which the information may be put").

## 2. Section 618(f) Does Not Bar Limited Disclosure in Judicial Proceedings

As noted, the statute at issue here is section 618, which governs military board deliberations for active-duty service members, including chaplains. 10 U.S.C. § 618. Section 618(f) states that "[e]xcept as authorized or required by this section, proceedings of a selection board convened under section 611(a) of this title may not be disclosed to any person not a member of the board." *Id.* To comply with section 618(f), all selection-board personnel take an oath swearing or affirming that they "will not divulge the proceedings of this board except as authorized or required by the Secretary of the Navy or higher authority." Pls.' Mot. Ex. 1.

The defendants assert that section 618(f) creates a blanket prohibition against disclosure (including discovery) of selection-board proceedings. Defs.' Opp'n at 16–17. Stressing Congress' "clear direction that the deliberations of the boards be disclosed to no person not a member of the board," the defendants state that section 618(f) "addresses government information about the official conduct of military offices in a sensitive and important matter, and expressly protects that information to anyone, save the Secretary." *Id.* at 18–19. Alternatively, the defendants argue that section 618(f) creates a qualified privilege, and that the plaintiffs' need for the requested testimony does not outweigh the government's interest in preventing its disclosure. *Id.* at 19, 26. The plaintiffs dispute both arguments. First, the plaintiffs state that *section 618(f) does not create an absolute bar to discovery.* Pls.' Mot. at 8–9. Second, the plaintiffs contend that even if section 618(f) creates a qualified privilege, the court should extend the government-misconduct exception to section 618(f) and allow discovery. *Id.* at 9.

---

10. One court has interpreted *Friedman's* "proper weight" analysis as requiring the classic balancing of confidentiality-vs.-need *as a prerequisite to* allowing discovery to proceed. *Gould, Inc. v. Mitsui Mining & Smelting Co., Ltd.*, 139 F.R.D. 244, 246 (D.D.C.1991) (citing *Friedman*, 738 F.2d at 1344). A close reading of *Laxalt* reveals that the court's "proper weight" analysis serves not as a prerequisite to discovery, however, but simply as an aid to the court in determining how to exercise its traditional authority to limit disclosure. *Laxalt*, 809 F.2d at 889–90 (stating that "a test of necessity [is not] a *prerequisite* to initiating discovery of records" and that "[t]he need to balance conflicting interests is entirely different from the proposition ... that [records] are exempt ... from civil discovery absent a specific showing of need" (emphasis in original)).

■ Following the directive of our court of appeals, the court looks to the plain language of section 618(f) to determine whether it creates an absolute or qualified privilege against discovery. *Laxalt*, 809 F.2d at 889; *Friedman*, 738 F.2d at 1343. Because section 618(f) does not contain specific language barring discovery, and because of the circuit's emphasis on providing litigants full access to relevant information, the court concludes that section 618(f) does not create an absolute or qualified privilege barring discovery of selection-board proceedings. *Id.* The court therefore grants the plaintiffs' motion to compel.

■ Remaining before the court, however, is the relevance of section 618(f) in determining the appropriate scope and manner of discovery. *Laxalt*, 809 F.2d at 889. Toward that end, the court must weigh the policies underlying section 618(f) against the factors supporting discovery here. *Id.*

Looking first to the policies underlying section 618(f), the court notes that the legislative history of section 618(f), although somewhat sparse, indicates that Congress enacted the provision "[t]o encourage candid discussions free from outside interference." S. REP. 102–482, at 2 (1992); *accord* Defs.' Opp'n Ex. H ("England Decl.") (stating that "[f]ree, uninhibited, and candid deliberations by selection boards are . . . vital to the effective functioning of the selection board process" and that "[r]elease of information regarding these proceedings to the public will severely undermine the [Navy's] ability to effectively operate its promotion and selective early retirement systems"). At the same time, the legislative history of the act that established section 618(f) as part of the selection-board process reveals Congress' steadfast interest in ensuring a uniform and merits-based selection system. *E.g.*, H.R. REP. 96–1462, at 3, 66–69 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6333 (describing the new uniform selection-board procedures of the 1980 Defense Officer Personnel Management Act). Congressional pronouncements since then have emphasized the need to maintain "the integrity of a selection system that provides all officers with a fair opportunity to be selected on merit" and to "keep the promotion system fair and free from manipulation." 133 CONG. REC. S10642–02 (daily ed. July 24, 1987) (statement of Sen. Nunn); *see also* S.REP. No. 102–1, at 24 (1991) (indicating that "[t]he integrity of the promotion process is essential to the integrity of the officer corps"); S.REP. No. 102–113 (1991) (stating that "[board] selections must be fair, impartial and based upon demonstrated potential instead of subjective criteria, and they must be seen as such by our officer corps"). Taken together, these actions indicate that Congress views section 618(f) as a means of promoting frank discussions among selection-board personnel, but does so in the context of ensuring the overall integrity of the armed forces selection system. *Laxalt*, 809 F.2d at 889.

Turning to the factors supporting discovery, the court notes that, given the confidentiality created by the oath, only selection-board personnel—the witnesses to the decision-making process—have direct knowledge of possible religious discrimination in the selection-board process. The defendants suggest that the plaintiffs instead pursue discovery regarding the Navy's allegedly discriminatory intent by interviewing the Chaplain Corps leadership and regarding the Navy's bias by testing the accuracy of the defendants' promotion board statistics. Defs.' Opp'n at 30. But these alternatives do not constitute direct evidence, and this court has already indicated that it would defer until after discovery its decision as to how much of the plaintiffs' initial showing of a suggestion of denominational preference must be composed of statistical evidence. *Adair*, 217 F.Supp.2d at 15 n. 9.

Accordingly, the scope and manner of discovery in this case must take into account the defendants' interest in preventing a chill in selection-board discussions, the defendants' interest in maintaining integrity in selection-board proceedings, and the plaintiffs' interest in direct evidence of possible religious discrimination. *Laxalt*, 809 F.2d at 889. The court therefore exercises its supervisory authority to permit the plaintiffs to conduct limited discovery of selection-board personnel in a manner that is focused and that minimizes the possibility of harm to the se-

lection–board process. *Id.* at 889–90. Rather than impose a discovery plan from above, however, the court directs the parties—who know their nature and extent of their interests far better than the court—to jointly propose a plan of discovery regarding the testimony of selection-board personnel.

Finally, because the court grants the plaintiffs' motion to compel, Rule 37(a)(4) directs the court to require the defendants to pay reasonable expenses unless the defendants' objection was "substantially justified." FED. R.CIV.P. 37(a)(4). In this case, the court concludes that the defendants' opposition to the plaintiffs' motion to compel was substantially justified because "reasonable people could differ" on whether the defendants, having asserted a deliberative process or statutory privilege, were bound to comply with discovery rules.[11] *Pierce,* 487 U.S. at 565, 108 S.Ct. 2541; *accord In re Multi–Piece Rim Prods. Liability Litig.,* 653 F.2d 671, 680 (D.C.Cir.1981) (affirming the district court's finding of substantial justification in part because of the subtlety of the legal issues presented). Accordingly, awarding reasonable expenses against the defendants would not be just and would not serve the rule's purpose of deterring unwarranted discovery objections. *Bonds,* 93 F.3d at 808; *Cobell I,* 213 F.R.D. at 29; FED.R.CIV.P. 37(a)(4) advisory committee's note.

## F. The Court Denies Other Pending Discovery Motions and Directs the Parties to Submit a Revised Status Report

The court now turns to the plaintiffs' motion asking the court to find that the defendants have waived their opposition to the plaintiffs' motion to compel, or, in the alternative, to allow them to file their waiver motion as a supplemental pleading. In this waiver motion, the plaintiffs raise two concerns. First, the plaintiffs theorize that the defendants have waived any privilege by propounding an interrogatory that seems to direct the plaintiffs (including those plaintiffs who served as selection-board personnel) to divulge selection-board proceedings in violation of both section 618(f) and their oath. Pls.' Waiver Mot. at 2–11. Second, the plaintiffs state that as a result of the defendants' actions, they face a Hobson's choice of violating discovery rules or their oath. *Id.* at 10–11. In light of the court's decision today, the plaintiffs' motion is moot, and the court denies it as such.[12]

As for the remaining discovery motions, the court denies without prejudice the plaintiffs' motion to alter the limits for the number of depositions and interrogatories, along with the plaintiffs' motions to refer that motion and future discovery motions to a magistrate judge.[13] The court also denies as moot the plaintiffs' motion to vacate the discovery dates set forth in the parties' October 1, 2002 joint status report.[14] In light of today's action and the court's recent decision granting the plaintiffs leave to amend their complaint, the court suspects that both the limits set forth in the plaintiffs' motion to alter and the discovery dates set forth in the joint status report are obsolete.

Accordingly, the court directs the parties to submit a revised joint status report that outlines not only the parties' plan of discov-

11. The court also notes that the parties raised their disagreement regarding discovery of selection-board proceedings early on, giving the court ample advance notice of the existence and non-frivolous nature of the dispute. *E.g.,* Joint LCvR 16.3 Report dated Feb. 4, 2002.

12. As an aside, the court notes that any Hobson's choice disappeared as soon as the plaintiffs consulted with the defendants. Prior to the filing of the motion, the defendants' counsel attempted both orally and in writing to clarify the disputed interrogatory. Defs.' Resp. at 4 & Ex. A. These communications from the defendants' counsel should have resolved any dilemma allegedly fac-

ing the plaintiffs as a result of the defendants' interrogatory.

13. On June 26, 2003, the court granted the parties' request to hold the plaintiffs' motion to alter in abeyance until the parties complied with the court's Standing Order. Order dated June 26, 2003.

14. Although the court has not issued a formal schedule for discovery in this case, the parties established a discovery schedule as part of their court-ordered October 1, 2002 status report, and that schedule has guided the parties' efforts to date. Status Report dated Oct. 1, 2002.

ery regarding the testimony of selection-board personnel (as described in part III.E.2 *supra*), but proposes an amended discovery schedule that takes into account the parties' progress to date and the current posture of the case.[15] Because both parties have indicated an eagerness to move forward on discovery, the court expects the parties to actively continue working on discovery matters as they draft their amended schedule. *E.g.*, Defs.' Resp. to Pls.' Status Report & Mot. ("Defs.' Resp.") at 3 (stating that "[d]efendants oppose an infinite, unending discovery timetable that gives plaintiffs no incentive whatsoever to diligently pursue discovery and bring this matter to a decision on the merits"); Pls.' Reply to Defs.' Resp. at 2 (stating that "[d]elay [in discovery] only harms plaintiffs and helps the defendants").

Finally, to keep this case on track, the court puts the parties on notice that it expects a maximum of cooperation and a minimum of filings from the parties. Toward that end, the court will henceforth strictly enforce its Standing Order and the federal and local discovery rules, imposing sanctions when warranted.

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion to compel and denies other pending discovery motions. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 2nd day of September, 2003.

15. The court expects that in this effort, the parties will stipulate to reasonable alterations to the deposition and interrogatory limitations, and will resolve any outstanding issues regarding expert disclosures.